835 A.2d 352 (2003)
364 N.J. Super. 284
Anthony GALANTE, Individually, and as Administrator Ad Prosequendum and General Administrator of the Estate of Jeanine M. Galante, deceased, Plaintiff/Respondent,
v.
Michael A. MAY, Federick J. May, Kevin Moore, Silbina May, as an interested party, Allstate Insurance Company, Defendants, and
Liberty Mutual Insurance Company, Defendant/Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 22, 2003.
Decided November 18, 2003.
*353 John T. Sullivan argued the cause for appellant (Lamb, Hartung, Kretzer, Reinman & DePascale, attorneys; Mr. Sullivan on the brief).
Kenneth T. Gallo, Ridgewood, argued the cause for respondent (Gallo & Gallo, attorneys; Mr. Gallo on the brief).
Before Judges KESTIN, CUFF and WINKELSTEIN.
The opinion of the court was delivered by WINKELSTEIN, J.A.D.
In this insurance coverage case we are asked to decide whether the existence of a survival action and a wrongful death action arising out of the death of a single *354 person each trigger a separate "per person" coverage under a split limit liability policy, with limits of $100,000 "per person," and $300,000 "per accident." The Law Division judge concluded that because the wrongful death claim and the survivor claim were independent causes of actions, each claim was individually entitled to separate "per person" coverage under the policy. As a consequence, he entered a final judgment in favor of plaintiffs and against defendants for $200,000, representing $100,000 for the wrongful death claim and $100,000 for the survivor claim. We reverse. Based on the language of the policy, we conclude that the maximum coverage for both the wrongful death and survivor claims arising out of the injuries and ultimate death of the decedent is subject to a single $100,000 "per person" liability limit.
On January 2, 1999, slightly past midnight, defendant Frederick May was driving a car, owned by defendant Michael May, on Route 4 westbound near the intersection with River Road in Teaneck. May was racing with a car driven by defendant Kevin Moore, traveling at a high rate of speed while weaving in and out of traffic. May's vehicle struck the curb, a traffic sign, a guardrail, and the base of a light pole, and eventually crashed down the side of River Road. May was injured in the accident. Jeanine Galante (decedent), his passenger, was ejected from the car and pronounced dead at the scene.
The car was insured by Liberty Mutual Insurance Company. The policy, in part A"Liability CoverageInsuring Agreement," says: "We will pay for damages for `bodily injury' ... for which any `insured' becomes legally responsible because of an auto accident." The policy defines "bodily injury" as "bodily harm, sickness or disease, including death that results." The policy also contains a New Jersey Split Liability Limit endorsement which states:
The limit of liability shown in the Schedule or in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident.
On April 26, 2000, Anthony Galante, individually and as Administrator Ad Prosequendum and General Administrator of the Estate of Jeanine Galante, filed a wrongful death action under the New Jersey Wrongful Death Act, N.J.S.A. 2A:31-1 to -6, and a survivor action, under the New Jersey Survivor Act, N.J.S.A. 2A:15-3, against Moore and the Mays. He also filed a declaratory judgment action against Liberty Mutual in which he argued that the wrongful death and survivor actions each triggered a separate "per person" limit of liability of coverage under Liberty Mutual's policy.
With the Mays conceding liability, the parties stipulated that the coverage issue would be resolved by way of motion; the judge would determine the amount of coverage available and enter that amount as a final judgment against the Mays. After hearing arguments on the motion, the Law Division judge entered a final judgment on November 22, 2002, against the May defendants in the amount of $200,000. As the reason for his decision, the judge wrote on the order: "see Vassiliu v. Daimler Chrysler Corp." [356 N.J.Super. 447, 813 A.2d 547 (App.Div.), certif. granted, 175 N.J. 547, 816 A.2d 1049 (2002)].
On appeal, Liberty Mutual argues that under the terms of the policy, wrongful death and survivor claims that arise out of "bodily injury" to one person only trigger one "per person" liability limit. Said another way, it asserts that the "person" in *355 the policy language"bodily injury sustained by any one person in any one auto accident"refers to decedent, not to "persons" such as decedent's survivors or decedent's estate. Plaintiffs take a broader view of the policy language. They claim the "person" in that phrase refers to each person who is damaged as a result of the accident. In other words, because both decedent's estate and her survivors were damaged by the injuries decedent sustained in the accident, each of these "persons" would be entitled to claim up to $100,000 of "per person" coverage under the policy, subject to the $300,000 "per accident" policy limitation.
Actions under both the New Jersey Wrongful Death Act and the New Jersey Survivor Act arise from the death of a party, but "they serve different purposes and are designed to provide a remedy to different parties." Smith v. Whitaker, 160 N.J. 221, 231, 734 A.2d 243 (1999). Recovery under the Wrongful Death Act compensates the survivors of the decedent for "the pecuniary losses they suffered because of the tortious conduct of others." Ibid. (quoting Alexander v. Whitman, 114 F.3d 1392, 1398 (3d Cir.1997)). The Survivor Act preserves for the decedent's estate "any personal cause of action that decedent would have had if he or she had survived." Id. at 233, 734 A.2d 243. Thus, the Wrongful Death Act benefits the heirs of the decedent, while the Survivor Act provides a remedy to a decedent's executor or administrator.
Generally, "under [insurance] policies fixing a maximum recovery for bodily injury to one person, the limitation is applicable to all claims of damage flowing from such bodily injury, and it is therefore, immaterial that some part of the damages may be claimed by a person other than the one suffering the bodily injuries." Williams v. State Farm Mut. Auto. Ins. Co., 99 N.J.Super. 377, 380, 240 A.2d 38 (Law Div.1968), aff'd, 104 N.J.Super. 403, 250 A.2d 155 (App.Div.), aff'd, 54 N.J. 580, 258 A.2d 368 (1969). In Williams, the court held "that the husband's claim for loss of services and medical expenses are included within the $25,000 limit of liability; in other words, all damage claims, direct and consequential, resulting from injury to one person are subject to the $25,000 limitation." Id. at 379, 240 A.2d 38. The total recovery could not exceed the limits of liability under the contract, no matter how many individuals legally shared in the recovery. Ibid.; see also Harris v. Security Ins. Group, 140 N.J.Super. 10, 12, 354 A.2d 704 (App.Div. 1976) (finding husband's per quod recovery included within the policy's $10,000 limit of liability for all damages due to bodily injury sustained by one person as a result of one accident).
More recently, we addressed whether each of a decedent's dependants had a separate cause of action for the loss of the decedent's advice, services and companionship under the Wrongful Death Act, affording each dependant separate coverage under the applicable automobile insurance policy. DeFelice v. Beall, 274 N.J.Super. 592, 594, 644 A.2d 1136 (App.Div.), certif. denied, 138 N.J. 268, 649 A.2d 1288 (1994). We concluded that all of the dependents' claims were subject to the single "per person" limit in the policy in that each was "derivative and dependent upon the direct injury to the decedent." Ibid.
DeFelice suffered fatal injuries in a car accident; a widow and three children survived him. Ibid. Beall carried a policy with a split liability limit coverage in the amount of $250,000 "per person" and $500,000 "per accident". Ibid. The plaintiffs argued that due to the number of claims and heirs, separate "per accident" limits should be triggered. Ibid. The *356 relevant policy language stated, "The limit of liability ... is our maximum limit of liability for all damages resulting from any one auto accident. This is the most we will pay regardless of the number of: 1. `Insureds'; 2. Claims made; 3. Vehicles or premiums shown in the Declarations; or 4. Vehicles involved in the auto accident." Id. at 595, 644 A.2d 1136. Relying on the plain language of the policy, we concluded that where one person was injured and died from injuries sustained in the automobile accident, "the loss of care, guidance, advice, and services claims of the dependents are subsumed in a single action under the Wrongful Death Act, and are components of a single pecuniary loss claim. The claim of the administrator ad prosequendum or the executor is subject to the per-person limit of the policy." Id. at 598, 644 A.2d 1136.
Contrary to the precedent established in these cases, plaintiffs argue that this case is controlled by Vassiliu v. Daimler Chrysler Corp., supra, where another panel of this court affirmed the Law Division[1] decision finding separate "per person" coverage for the estate's survival claim and the decedent's heirs' wrongful death claims. 356 N.J.Super. at 454-55, 813 A.2d 547. Under the language of the applicable policy in this case, however, we find Vassiliu to be distinguishable.
In Vassiliu, supra, Prudential Property & Casualty Insurance Company issued a split limit policy with coverage of $15,000 "per person" and $30,000 "per accident." Id. at 452, 813 A.2d 547. The pertinent policy provision was:
AmountBodily Injury: Each Person
The amount shown on the Declarations Page under "Bodily InjuryEach Accident" is the limit of our liability under this part for all damages, including damages for care or loss of services, arising out of bodily injury to one person as a result of any one accident.
[Id. at 550-51.]
Thus, in the absence of any reference to "death," the policy language could be construed as not including both the injured person's pre-death injuries and the damages arising from the person's death within the same liability limits for bodily injury to one injured person. Whereas here, on the other hand, Liberty Mutual's liability limit for bodily injury to one person does include both the injured person's pre-death injuries as well as the damages which flow from the person's death. Accordingly, both the injuries to decedent prior to her death, encompassed by the Survivor action, and the cause of action based upon her death, the Wrongful Death action, are subject to the same "per person" coverage provision of the policy.
Insurance policies are contracts of adhesion and subject to special rules of interpretation; nevertheless, an insurance policy is generally interpreted according to its plain and ordinary meaning. Progressive Cas. Ins. Co. v. Hurley, 166 N.J. 260, 272-3, 765 A.2d 195 (2001). In the absence of an ambiguity in the policy language, "a court should not engage in a strained construction to support the imposition of liability ... [or] write for the insured a better policy of insurance than the one purchased." Id. at 273, 765 A.2d 195 (internal quotations omitted). Insurance policies are construed to effectuate the reasonable expectations of the insured. Fairlawn Indus., Ltd. v. Gerling Am. Ins. Co., 342 N.J.Super. 113, 118, 775 A.2d 744 (App.Div.2001).
Here, the policy language is not ambiguous. One person, Jeanine Galante, died in the motor vehicle accident. The $100,000 *357 "per person" limitation of liability provision of the Liberty Mutual policy includes both injuries she sustained prior to her death to which she would have been entitled had she survived, and those damages resulting from her death to which her heirs are entitled.
To agree with plaintiff's contrary position, would, for example, allow a spouse with a per quod claim to be considered a separate person from the injured party, and entitle the spouse to his or her own claim under the "per person" provision of the insurance policy, regardless of the policy language. Judicial precedent simply does not support such a result. See Harris, supra, 140 N.J.Super. at 12, 354 A.2d 704; Williams, supra, 99 N.J.Super. at 379, 240 A.2d 38.
Moreover, just as a spouse's per quod claim is based upon the injuries to the person actually involved in the accident, so do the claims of plaintiffs in wrongful death and survival actions necessarily arise out of the death of the person in the accident. To afford each cause of action separate coverage under the policy language at issue in this case would ignore the derivative nature of the two claims, which both arise out of Jeanine Galante's death. See also McKinney v. Allstate Ins. Co., 188 Ill.2d 493, 243 Ill.Dec. 56, 722 N.E.2d 1125, 1129 (1999) (holding a limitation on damages arising out of bodily injury to one person involved in an accident applies to all claims arising from the death of that person); United States Auto. Ass'n v. Lilly, 217 Cal.App.3d 1396, 1404, 266 Cal.Rptr. 691 (1990) (same); Geico Gen. Ins. Co. v. Arnold, 730 So.2d 782, 785 (Fla.Dist.Ct.App.1999) (same).
Plaintiffs claim the Court's decision in Smith calls for a different conclusion. We disagree. In Smith, supra, the issue was whether the plaintiff had established a valid claim for punitive damages under the Survivor Act in the absence of an underlying award of compensatory damages for pain and suffering. 160 N.J. at 233, 734 A.2d 243. In describing the historical differences between the Wrongful Death Act and the Survivor Act, the Court explained that although both actions were derived from the death of a plaintiff, they served different purposes and were designed to provide a remedy to different parties. Id. at 231, 734 A.2d 243. The Smith Court did not, however, address the issue here whether wrongful death and survivor actions each implicate a separate "per person" coverage under a split liability policy. Nor did Smith overrule or disapprove of the principles espoused in DeFelice, Harris, or Williams. Therefore, Smith is not controlling.
Plaintiffs further argue that the language of the New Jersey Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 to -35 (NJARRA), and the act concerning Compulsory Motor Vehicle Insurance (CMVI), N.J.S.A. 39:6B-1 to -35, support their position. They submit that these statutory provisions, which mandate that all New Jersey drivers carry automobile insurance, require that any "person" who suffers a loss as a result of an automobile accident, not just the person injured in the accident, be considered a separate person for policy coverage. We do not find this argument to be persuasive.
The pertinent provision of the NJARRA states:
[E]very owner or registered owner of an automobile registered ... in this State shall maintain liability insurance coverage... insuring against loss resulting from liability imposed by law for bodily injury, death and property damage sustained by any person arising out of the ownership, maintenance, operation or use of an automobile....
(emphasis added).
*358 The CMVI says that the owner of a motor vehicle must have insurance to cover for "[L]oss resulting from liability ... for bodily injury, death ... sustained by any person arising out of the ownership, maintenance, operation or use of an automobile...." N.J.S.A. 39:6B-1 (emphasis added).
Each of these statutes requires the owner of an automobile to insure against a loss sustained by any person arising out of the use of the automobile. The Liberty Mutual policy does exactly that. Both decedent's survivors and her estate are afforded coverage under the policy. The statutes do not require, however, as plaintiffs suggest, that each "person" with a claim is entitled to a separate "per person" limit, when more than one claim arises out of the death of one person in one accident.
In summary, we conclude that both the wrongful death and survival claims arising out of Jeanine Galante's death are subject to the same $100,000 "per person" liability limit. Accordingly, we reverse the order of the trial court entering judgment for $200,000, and remand for the court to enter judgment in the amount of $100,000 consistent with this opinion.
Reversed and remanded.
NOTES
[1] Vassiliu v. Daimler Chrysler Corp., 356 N.J.Super. 546, 813 A.2d 608 (Law Div.2000).