839 A.2d 863

CHRISTINE R. VASSILIU, INDIVIDUALLY, AS GENERAL ADMIN-ISTRATRIX AND AS ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF HRISTOS VASSILIU, DECEASED AND AS GUARDIAN AD LITEM FOR CHRISTINA R. VASSILIU, A MINOR, PLAINTIFF–RESPONDENT, v. DAIMLER CHRYSLER CORPORATION, MT. EPHRAIM DODGE, INC., SHAUN L. O'BRIEN, SCOTT RHODES, JOHN DOES # 1–5, (FICTITIOUS NAMES OF DRIVERS OF VEHICLES INVOLVED IN THE SUBJECT COLLISION); JOHN DOES # 6–10, (FICTITIOUS NAMES OF OWNERS OF VEHICLES INVOLVED IN THE SUBJECT COLLISION AND OR EMPLOYERS OF ANY DRIVERS); JOHN DOES # 11–20, (FICTITIOUS NAMES OF INDIVIDUALS, SOLE PROPRIETORSHIPS, PARTNERSHIPS, CORPORATIONS OR GOVERNMENTAL ENTITIES INVOLVED IN THE RETAIL SALE, DISTRIBUTION, ASSEMBLY, INSTALLATION, DESIGN, REPAIR, MAINTENANCE, MANUFACTURE OR WHOLESALE OF THE SUBJECT, PRODUCT AND/OR ANY OF ITS COMPONENT PARTS); JOHN DOES # 21–25, (FICTITIOUS NAMES OF INDIVIDUALS, SOLE PROPRIETORSHIPS, PARTNERSHIPS, CORPORATIONS OR GOVERNMENTAL ENTITIES WHO REPAIRED THE PRODUCT); JOHN DOES # 26–30, (FICTITIOUS NAMES OF INDIVIDUALS, SOLE PROPRIETORSHIPS, PARTNERSHIPS, CORPORATIONS OR GOVERNMENTAL ENTITIES WHO INSPECTED THE PRODUCT); JOINTLY, SEVERALLY, OR IN THE ALTERNATIVE, DEFENDANTS.

CHRISTINE R. VASSILIU, AS GENERAL ADMINISTRATRIX AND AS ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF HRISTOS VASSILIU, DECEASED, PLAINTIFF–RESPONDENT AND CROSS–APPELLANT, v. PRUDENTIAL PROPERTY & CASUALTY INSURANCE COMPANY, DEFENDANT–APPELLANT AND CROSS–RESPONDENT, AND SELECTIVE INSURANCE COMPANY, DEFENDANT–RESPONDENT AND CROSS–RESPONDENT, AND PARKWAY INSURANCE COMPANY, DEFENDANT.

Argued October 21, 2003—Decided January 22, 2004.

288

*Daniel J. Pomeroy,* argued the cause for appellant and cross-respondent (*Mortenson and Pomeroy,* attorneys; *Mr. Pomeroy* and *Karen E. Heller,* on the briefs).

*Louis J. DeVoto,* argued the cause for respondent and cross-appellant (*Ferrara, Rossetti & DeVoto,* attorneys; *Mr. DeVoto* and *Jennifer A. Deiter,* on the brief).

*Stephen G. Sobocinski,* argued the cause for respondent and cross-respondent (*Tucker & Munyon,* attorneys).

*Susan Stryker,* submitted a brief on behalf of *amici curiae* Alliance of American Insurers, American Insurance Association, National Association of Independent Insurers and Insurance Council of New Jersey (*Sterns & Weinroth,* attorneys; *Ms. Stryker* and *Mitchell A. Livingston,* on the brief).

*Kevin Haverty* on behalf of *amicus curiae* The Association of Trial Lawyers of America–New Jersey, relied up on the brief submitted to the Appellate Division (*Williams, Cuker & Berezofsky,* attorneys).

Justice VERNIERO delivered the opinion of the Court.

This is an insurance coverage case. Plaintiff commenced a survival action and wrongful death action arising out of her husband's death due to an automobile accident. Specifically, the decedent died of injuries that he had sustained when his van was struck by another vehicle. The principal question is whether plaintiff's actions trigger separate "per person" coverage claims under a split limit insurance policy or whether the claims are subject to a single limit. A second question is whether the insurers are entitled to a credit for an amount received by plaintiff in settlement of claims against the manufacturer and seller of the decedent's van.

The Appellate Division concluded that, because survival and wrongful death actions legally are distinct, they each trigger a separate "per person" limit. As for the second question, the court found that the insurers were entitled to set off an amount otherwise owed as underinsured motorist coverage with the amount that plaintiff had received in settlement of claims asserted against two of the non-insurer defendants. Based on the unambiguous language found in the applicable policies, we reverse the Appellate Division's judgment in respect of the "per person" limit question. We affirm that court's judgment insofar as the setoff question is concerned.

I.

On June 24, 1995, Hristos Vassiliu was driving his van in a southerly direction on Route 553 in Franklin Township, Gloucester County. At the same time Shaun O'Brien was driving a vehicle in a westerly direction on Route 604, which intersects Route 553. The O'Brien vehicle collided with the Vassiliu vehicle after O'Brien

apparently had ignored a red-blinking light and stop sign that controlled the intersection on the side of Route 604. Vassiliu died of his injuries.

At the time of the crash the decedent's wife was pregnant with the couple's first child. In her capacity as General Administratrix for the decedent's estate and as Administratrix *Ad Prosequendum* for the decedent's heirs (collectively, plaintiff), the decedent's wife filed a personal injury complaint consisting of a survival action and a wrongful death action, naming O'Brien as a defendant. Based on a products liability theory of recovery, plaintiff also sued the manufacturer and seller (separate corporate entities) of the decedent's van.

O'Brien was insured under two liability policies. The first policy was a $35,000 single limit policy issued by New Hampshire Insurance Company (New Hampshire), and the second was a $15,000 "per person" and $30,000 "per accident" split limit policy issued by Prudential Property & Casualty Insurance Company (Prudential). In addition, the decedent was covered by underinsured motorist (UIM) coverage under policies issued by Prudential and Selective Insurance Company (Selective). Those policies also consisted of split limit coverage but in larger amounts, $100,000 "per person" and $300,000 "per accident."

The "per person" provision in Prudential's liability policy provides:

Amount - Bodily Injury: Each Person

The amount shown on the Declarations Page under *"Bodily Injury - Each Person"* is the limit of our liability under this part for all damages, including damages for care or loss of services, arising out of bodily injury to one person as a result of any one accident.

As for Prudential's UIM provision, there is language nearly identical to the "per person" language in the insurer's liability policy. Selective's UIM provision contains similar language. (Although, as will be seen below, that language refers solely to "Uninsured Motorists Coverage," the policy states elsewhere that it includes UIM coverage.) Selective's policy provides, in relevant part:

LIMIT OF LIABILITY

The limit of Bodily Injury Liability shown in the Schedule or in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss [of] services or death, arising out of "bodily injury" sustained by any one person in any one accident.

The policies also include provisions concerning whether the UIM carriers are entitled to credits or setoffs for settlements. Prudential's policy provides that "[t]he amount we agree to pay under this part will be reduced by any amount recoverable from persons responsible for [an] accident[.]" In the same vein, Selective's policy states that "the limit of liability [for UIM coverage] shall be reduced by all sums ... [p]aid because of the 'bodily injury' or 'property damage' by or on behalf of persons or organizations who may be legally responsible."

Around the time of jury selection the products liability defendants settled for $215,000 without admitting liability. The matter then proceeded without a jury. During the trial O'Brien filed for bankruptcy. Plaintiff eventually agreed that O'Brien's damages would be limited to the proceeds from that defendant's insurance policies, and the bankruptcy court permitted the trial to proceed.

The trial resulted in a finding that O'Brien was one hundred percent negligent. The court awarded damages in the amount of $175,000 for the survival action and $1,750,000 for the wrongful death action, in addition to funeral expenses. New Hampshire ultimately paid $35,000, the full amount due under its liability policy, and Prudential paid $15,000 from its liability policy. As noted, plaintiff also received $215,000 from the products liability settlement.

Plaintiff also sought an additional $15,000 from the Prudential liability policy, arguing that the survival and wrongful death actions each qualified for the "per person" coverage. On the same grounds, plaintiff filed a declaratory judgment action seeking the $100,000 "per person" amount from Prudential's and Selective's UIM policies. The parties do not question the trial court's determination that, in this case, "[t]he limits of multiple available UIM policies are not stacked. Instead, any recovery is prorated

between the applicable UIM policies in the same proportion as the limits of each bears to the total of the limits of all available UIM policies." *Vassiliu v. Daimler Chrysler Corp.*, 356 *N.J.Super.* 546, 549 n. 1, 813 *A.2d* 608, 610 n. 1 (Law Div.2000) (citing *N.J.S.A.* 17:28–1.1c).

The trial court agreed with plaintiff in all respects. It reasoned that "wrongful death actions and survival actions are treated as separate and discrete actions affording different damages remedies to different parties, even though they may arise from the identical occurrence the death of a family member from injuries sustained in a vehicular accident." *Id.* at 548, 813 *A.2d* at 610. The court further explained that

since the coverage limits of the Prudential liability insurance policy at issue in this case are $15,000/$30,000, a total of $30,000 is available: $15,000 for the wrongful death action, and $15,000 for the survival action. Similarly, since the coverage limits of the Prudential and Selective UIM policies at issue are each $100,000/$300,000, a total of $200,000 in UIM coverage is available: $100,000 for the wrongful death action, and $100,000 for the survival action.

[*Id.* at 548–49, 813 *A.2d* at 610.]

The trial court reduced the UIM amount by the amounts obtained under O'Brien's liability policies, *id.* at 549, 813 *A.2d* at 610, a reduction that the parties also do not challenge. The court denied, however, the insurers' claim that they are entitled to set off the $215,000 products liability settlement from the UIM amount. *Id.* at 563, 813 *A.2d* at 619–20.

The Appellate Division affirmed in part and reversed in part in a reported decision. *Vassiliu v. Daimler Chrysler Corp.*, 356 *N.J.Super.* 447, 813 *A.2d* 547 (2002). The panel agreed with the trial court that the survival and wrongful death actions "each triggered a separate per person limit." *Id.* at 455, 813 *A.2d* at 552. It disagreed, however, with the trial court's decision in respect of the setoff question. After considering the circumstances of the litigation, the nature of UIM coverage, the carriers' policy language pertaining to settlements, and relevant case law, the Appellate Division concluded that the insurers are entitled to a

credit for the products liability settlement monies. *Id.* at 455–60, 813 *A.*2d at 551–56.

In total, the Appellate Division's disposition resulted in $65,000 in coverage ($35,000 under the New Hampshire policy and $30,000 under the Prudential liability policy). Because the $215,000 settlement exceeded the total UIM coverage, the available UIM coverage amounted to zero dollars under the Appellate Division's analysis. We granted Prudential's petition for certification (which Selective joined) concerning the "per person" limit issue, and granted plaintiff's cross petition regarding the UIM setoff question. 175 *N.J.* 547, 816 *A.*2d 1049 (2003).

## II.

"[T]he words of an insurance policy are to be given their plain, ordinary meaning. In the absence of any ambiguity, courts should not write for the insured a better policy of insurance than the one purchased." *Zacarias v. Allstate Ins. Co.,* 168 *N.J.* 590, 595, 775 *A.*2d 1262, 1264 (2001) (internal citation and quotation marks omitted). Consistent with that basic tenet, we conclude that the "person" referenced in Prudential's liability policy is the decedent in this case, not the decedent's estate or his heirs as reflected in plaintiff's survival and wrongful death actions. Because the policy limits liability "for all damages ... arising out of bodily injury to one person," the total coverage is $15,000, the single "per person" limit. We discern no ambiguity in the policy that would warrant a contrary result.

We find no fault in the analysis of the courts below in respect of their conclusion that plaintiff's wrongful death and survivor actions legally are distinct. In *Galante v. May,* a different panel of the Appellate Division explained:

> Actions under both the New Jersey Wrongful Death Act and the New Jersey Survivor Act arise from the death of a party, but "they serve different purposes and are designed to provide a remedy to different parties." *Smith v. Whitaker,* 160 *N.J.* 221, 231, 734 *A.*2d 243[, 248] (1999). Recovery under the Wrongful Death Act compensates the survivors of the decedent for "the pecuniary losses they suffered because of the tortious conduct of others." *Ibid.* (quoting *Alexander v.*

*Whitman,* 114 *F.*3d 1392, 1398 (3d Cir.1997)). The Survivor Act preserves for the decedent's estate "any personal cause of action that decedent would have had if he or she had survived." *Id.* at 233, 734 *A.*2d 243 [at 249]. Thus, the Wrongful Death Act benefits the heirs of the decedent, while the Survivor Act provides a remedy to a decedent's executor or administrator.

[364 *N.J.Super.* 284, 288, 835 *A.*2d 352, 355 (2003).]

Notwithstanding the distinct nature of those claims, the *Galante* panel concluded, as we do here, that a wrongful death action and survivor action trigger a single "per person" limit in these circumstances. *Id.* at 293, 835 *A.*2d at 357–58. In so holding, the court cited the general rule that "under [insurance] policies fixing a maximum recovery for bodily injury to one person, the limitation is applicable to all claims of damage flowing from such bodily injury, and it is therefore, immaterial that some part of the damages may be claimed by a person other than the one suffering the bodily injuries."*Id.* at 289, 835 *A.*2d at 355 (internal citation and quotation marks omitted) (alteration in original); *see also DeFelice v. Beall,* 274 *N.J.Super.* 592, 594, 644 *A.*2d 1136, 1137 (App.Div.) (holding that claims of decedent's dependents were subject to "per person" limit in automobile insurance policy because claims were "derivative and dependent upon the direct injury to the decedent"), *certif. denied,* 138 *N.J.* 268, 649 *A.*2d 1288 (1994).

■ We hold that, because plaintiff's survival and wrongful death actions are derivative of and dependent on the decedent's injuries, including his unfortunate death, those actions are subject to a single "per person" limit in the Prudential liability policy. Given the similar wording of the two UIM policies, we reach the same conclusion in respect of those policies. We acknowledge that the *Galante* court distinguished its holding from the Appellate Division's opinion in this case by noting that, unlike the policy in *Galante,* here Prudential's policy does not explicitly list "death" when describing the type of damages subject to the $15,000 limit. 364 *N.J.Super.* at 290–91, 835 *A.*2d at 356. (In contrast, Selective's UIM provision specifically includes "death" so that presum-

ably the *Galante* court would not have distinguished its holding insofar as the Selective policy is concerned.)

We are not, however, persuaded by that asserted distinction. By its explicit terms, the Prudential "per person" limit applies "for all damages, *including* damages for care or loss of services, arising out of bodily injury to one person as a result of any one accident." (Emphasis added.) As just noted, unlike the language before the *Galante* court and the language in Selective's UIM policy, the language in the Prudential policy does not state, "for all damages, including damages for care or loss of services *or death*, arising out of bodily injury to one person as a result of any one accident." Yet, the lack of an expressed reference to "death" in the relevant phrase, which is set off by the word "including," does not mean that death is excluded as a consequence of bodily injury. Rather, "the word 'includes' is usually a term of enlargement, and not of limitation.... It, therefore, conveys the conclusion that there are other items includable, though not specifically enumerated[.]" 2A Norman Singer, *Sutherland Statutory Construction* § 47:07 at 231 (6th ed. 2000) (internal quotation marks and footnote omitted); *accord Fraser v. Robin Dee Day Camp*, 44 *N.J.* 480, 485, 210 *A.*2d 208, 210–11 (1965).

More broadly, common sense convinces us that an insurance contract that speaks to liability for "all damages ... arising out of bodily injury" includes death, the ultimate harm a person might suffer, as a basis of a claim. See *Jaquez v. National Cont'l Ins. Co.*, 178 *N.J.* 88, 100, 835 *A.*2d 309, 317 (2003) (applying "simple common sense" in support of holding regarding lack of coverage under initial-permission rule in automobile insurance case). From that perspective, we do not accept the notion that the decedent's death somehow is distinct from his pre-death bodily injuries for purposes of the "per person" coverage limitation.

Lastly, courts in other jurisdictions that have considered similar split limit policy language also have concluded that only a single "per person" limit applies when there are survivor and wrongful death claims arising out of the injury and death of a single person.

E.g., *McKinney v. Allstate Ins. Co.,* 188 *Ill.*2d 493, 243 *Ill.Dec.* 56, 722 *N.E.*2d 1125, 1128–29 (1999) (holding that similar language was "not ambiguous and clearly limit[ed] all claims arising out of [person's] death to a single [per person] limit"); *Geico Gen. Ins. Co. v. Arnold,* 730 *So.*2d 782, 785 (Fla.Dist.Ct.App.1999) (concluding that "plain and unambiguous terms" of policy limited insurer's total liability for all damages due to bodily injuries sustained by decedent to "per person" limit); *Cradoct v. Employers Cas. Co.,* 733 *S.W.*2d 301 (Tex.App.1987) (explaining that phrase "per person" applied to person injured in accident, not other persons suffering loss because of that injury).

## III.

The remaining issue is whether the insurers are entitled to set off the UIM coverage amount with the amount plaintiff had received as a result of the products liability settlement. As already mentioned, in concluding that the carriers were entitled to such a credit, the Appellate Division considered the circumstances of the litigation, the nature of UIM coverage, the policy language pertaining to settlements, and relevant case law. *Vassiliu, supra,* 356 *N.J.Super.* at 455–60, 813 *A.*2d at 552–56. We cannot improve on the Appellate Division's meticulous analysis in that regard, and we affirm its judgment on the setoff question substantially for the reasons expressed in that court's opinion.

In sum, plaintiff's claims are subject to a single "per person" limit as provided in the unambiguous policies before us. Thus, in addition to the $215,000 settlement amount, plaintiff is entitled to $50,000 in liability insurance (the $35,000 amount due under the New Hampshire policy and one payment of $15,000 due under the Prudential policy). Under our construction, plaintiff also would be entitled to $100,000 in total UIM coverage (representing coverage for one person), prior to any setoff adjustment. However, the UIM carriers are entitled to a credit for that entire amount in view of the $215,000 products liability settlement.

## IV.

The Appellate Division's judgment is reversed in part, affirmed in part.

*For reversing in part and affirming in part*—Chief Justice PORITZ and Justices LONG, VERNIERO, LaVECCHIA, ZAZZALI, ALBIN, and WALLACE—7.

*Opposed*—None.