# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
January 8, 2008 Session

## LISA DAWN GREEN ET AL. v. VICKI RENEE JOHNSON ET AL.

**Appeal by permission from the Court of Appeals, Eastern Section**
**Circuit Court for Knox County**
**No. 2-601-02    Harold Wimberly, Judge**

---

**No. E2006-02666-SC-R11-CV - Filed March 13, 2008**

---

We granted permission to appeal in this case to determine whether an uninsured motorist carrier may reduce amounts owed under an uninsured motorist provision by the amount of settlement proceeds an insured receives from a non-motorist defendant. Because the uninsured motorist statutes, codified at Tennessee Code Annotated sections 56-7-1201 to -1206, unambiguously allow an uninsured motorist carrier to limit its liability by "the sum of the limits collectible under all liability and/or primary uninsured motorist insurance polices, bonds, and securities applicable to the bodily injury or death of the insured," Tenn. Code Ann. § 56-7-1201(d), and to receive an offset or credit for "the total amount of damages collected by the insured from all parties alleged to be liable for the bodily injury or death of the insured," id. §1206(i), we conclude that the uninsured motorist carrier in this case is entitled to an offset for the monies the insured received from the non-motorist defendants. Accordingly, we affirm the decisions of the trial court and Court of Appeals.

### Tenn. R. App. P. 11; Judgment of the Court of Appeals Affirmed

CORNELIA A. CLARK, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and JANICE M. HOLDER, GARY R. WADE, and WILLIAM C. KOCH, JR., JJ., joined.

Annie S. Duncan and C. Edward Daniel, Knoxville, Tennessee, for the appellants, Lisa Dawn Green, Ronald Keith Green, Dustin Dillard Green, Hunter Green, and Kyra Green.

Dallas T. Reynolds, Knoxville, Tennessee, for the appellee, State Farm Mutual Automobile Insurance Company.[1]

---

[1] State Farm Mutual Automobile Insurance Company is the only defendant participating in this appeal.

**OPINION**

**Factual and Procedural History**

The material facts of this case are not in dispute. Just after 3:00 a.m. on September 28, 2002, Lisa Green ("Mrs. Green") was struck by an automobile while walking in a marked crosswalk at the intersection of Cumberland Avenue and Nineteenth Street in Knoxville.[2] Vicki Johnson, the eighteen-year-old driver of the vehicle, was intoxicated when she ran a red light and struck Mrs. Green. Tabatha[3] Connor, a passenger and co-owner of the vehicle, was also intoxicated. Both Ms. Johnson and Ms. Connor had previously been drinking at The Pub, a local tavern near the scene of the accident.

Seeking compensation for their injuries, on October 9, 2002, Mrs. Green, her husband, and their minor children filed suit against: Ms. Johnson; Tabatha Connor and Carroll Blankenship, the alleged owners of the vehicle; KJC of Knoxville, Inc., d/b/a The Pub; and Chad Matthew Corcoran and Stuart Jason Myers, employees at The Pub who sold Ms. Johnson and Ms. Connor alcohol. The Greens alleged that, under the doctrines of negligence, agency, and comparative fault and pursuant to the Dram Shop statutes, Tenn. Code Ann. §§ 57-10-101, -102 (2004), The Pub, its employees, Vicki Johnson, Tabatha Connor, and Carroll Blankenship were all liable for their injuries.

On May 27, 2005, an Order of Default Judgment was entered against Ms. Johnson and Ms. Connor.[4] Included in the Order was the trial court's determination that Mrs. Green was entitled to compensatory damages in the amount of $3,650,000.00 and punitive damages in the amount of $1,000,000.00. Additionally, the trial court determined that Ms. Johnson and Ms. Connor were 65% at fault and The Pub, Mr. Corcoran, and Mr. Myers were 35% at fault.[5] Finally, the trial court noted that The Pub and its employees had entered into a settlement with the Greens ("the Settlement")[6] and

---

[2] In her complaint, Mrs. Green, a City of Knoxville police officer, asserts that she was on-duty at the time of the accident. There is, however, no further reference to her work status in the record and no information pertaining to a workers' compensation claim.

[3] Ms. Connor's first name is spelled "Tabitha" and "Tabatha" in the pleadings. We will use "Tabatha" since that is the spelling found in the complaint and in the Order of Default Judgment against Ms. Connor.

[4] It is unclear from the record on appeal how the claims against Carroll Blankenship, the alleged co-owner of the vehicle, were resolved.

[5] This allocation of fault was applicable only to the compensatory damage award.

[6] Although the Order did not set forth the Settlement amount, the parties agree that the amount was equal to or greater than $50,000.00.

that all matters pertaining to uninsured motorist benefits and whether Ms. Johnson and Ms. Connor were uninsured were reserved for a later hearing.[7]

At the time of the accident, the Greens carried an insurance policy ("the Policy") with State Farm Mutual Automobile Insurance Company ("State Farm"). The Policy included uninsured motor vehicle coverage, the limits of liability being $50,000.00 per person, $100,000.00 per accident.[8] The Policy covered the "compensatory damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle." The Policy also stated that "[i]f the limits of liability under this [policy] are the minimum limits required by law, . . . any amount payable under this section shall be reduced by *any* amount paid or payable to or for the insured: (a) by or for *any* person or organization who is or may be held legally liable for the bodily injury . . . sustained by the insured." (emphases added).

Pursuant to the Policy, on August 28, 2006, State Farm filed a motion for summary judgment on the grounds that it had been relieved of all liability under the terms of the Policy.[9] Although conceding that neither Ms. Johnson nor Ms. Connor had automobile insurance at the time of the accident and, as such, that the Policy was applicable, State Farm asserted that: (1) its "total exposure" under the Policy was $50,000.00; (2) the Greens' settlement proceeds from other sources were equal to or greater than $50,000.00; and (3) pursuant to the uninsured motorists statutes, it was entitled to offset, or reduce its coverage amount by, any amounts the Greens collected from all other liable parties. State Farm argued that, because the $50,000.00 limit of liability due under the Policy should be offset by the $50,000.00 or more the Greens received from the Settlement, it was relieved of all obligations under the Policy and therefore was entitled to summary judgment as a matter of law.

The trial court agreed and granted State Farm's motion for summary judgment. The Greens appealed, arguing that, pursuant to Tennessee Code Annotated sections 56-7-1202(a)[10] and -1205[11]

---

[7] During the course of discovery, it was determined that neither Ms. Johnson nor Ms. Connor had automobile insurance coverage.

[8] Because Mrs. Green was the only member under the Green family policy involved in the accident, State Farm's limit of liability in this case is $50,000.00.

[9] Although State Farm was not a named party in the original complaint, pursuant to Tennessee Code Annotated section 56-7-1206(a) (2000), "[a]ny insured intending to rely on the coverage required by [Tennessee Code Annotated sections 56-7-1201 to -1206] shall, if any action is instituted against the owner and operator of an uninsured motor vehicle, serve a copy of the process upon the insurance company issuing the policy in the manner prescribed by law, as though such insurance company were a party defendant. Such company shall thereafter have the right to file pleadings and take other action allowable by law in the name of the owner and operator of the uninsured motor vehicle or in its own name . . . ."

[10] Tennessee Code Annotated section 56-7-1202(a) states: "'uninsured motor vehicle' means a motor vehicle whose ownership, maintenance, or use has resulted in the bodily injury, death, or damage to property of an insured, and for which the sum of the limits of liability available to the insured under all valid and collectible insurance policies,
(continued...)

-3-

(2000) and Sherer v. Linginfelter, 29 S.W.3d 451 (Tenn. 2000), State Farm "has subrogation or set off [sic] rights only as to payments made on behalf of an uninsured/underinsured *motorist*." (emphasis added). Because the Settlement was to compensate them for *non-motorists'* liabilities, the Greens argued that State Farm could not reduce its liability under the Policy. The Court of Appeals, however, found the Greens' reliance on Sherer misplaced and their interpretation of Tennessee Code Annotated section 56-7-1205 unpersuasive. Instead, the Court of Appeals held that prior appellate decisions discussing the uninsured motorist statutes clearly allow State Farm to reduce the amount owed under the Policy by the amounts the Greens received from the Settlement.

We granted the Greens' application for permission to appeal to determine whether an uninsured motorist carrier may reduce its liability under an uninsured motorist provision of an automobile insurance policy by the amount of settlement proceeds received by the insured from a non-motorist defendant, who is alleged to share responsibility for the bodily injury of the insured.

## Standard of Review

The trial court's grant of summary judgment, predicated on its interpretation of the uninsured motorist statutes, Tenn. Code Ann. §§ 56-7-1201 to -1206, is purely a question of law. Cumulus Broad., Inc. v. Shim, 226 S.W.3d 366, 373 (Tenn. 2007); Mooney v. Sneed, 30 S.W.3d 304, 306 (Tenn. 2000). Accordingly, our review is de novo, and no presumption of correctness attaches to the lower courts' judgments. Cumulus Broad., 226 S.W.3d at 373. A grant of summary judgment, however, is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04.

## Analysis

In their appeal to this Court, the Greens contend that no offset should be allowed in this case because the Settlement proceeds are from non-motorist defendants. They argue that it would be contrary to the intent of the legislature to allow an uninsured motorist carrier to receive an offset for amounts received from parties other than "owners or operators of uninsured motor vehicles." Tenn. Code Ann. § 56-7-1201(a). To support their argument, the Greens cite to Sherer v. Linginfelter, 29 S.W.3d 451 and Tennessee Code Annotated section 56-7-1205.

### *Sherer v. Linginfelter*

---

[10](...continued)
bonds, and securities applicable to the bodily injury, death, or damage to property is less than the applicable limits of uninsured motorist coverage provided to the insured under the policy against which the claim is made."

[11] Tennessee Code Annotated section 56-7-1205, in pertinent part, states: "[n]othing contained in this part shall be construed as requiring the forms of coverage provided pursuant to this part, whether alone or in combination with similar coverage afforded under other automobile liability policies, to afford limits in excess of those that would be afforded had the insured thereunder been involved in an accident with a motorist who was insured under a policy of liability insurance . . . . Such forms of coverage may include such terms, exclusions, limitations, conditions, and offsets, which are designed to avoid duplication of insurance and other benefits."

The Greens first cite to this Court's holding in Sherer that the uninsured motorist coverage provisions are for "the protection of persons insured thereunder who are legally entitled to recover compensatory damages from *owners or operators of uninsured motor vehicles* because of bodily injury." Sherer, 90 S.W.3d at 454 (citing Tenn. Code Ann. § 56-7-1201(a)) (emphasis added). As the Greens reason, because the amounts they received from the Settlement are not from *owners or operators of uninsured motor vehicles*, it would be contrary to the intent of the General Assembly to allow State Farm to offset its liability by those amounts. We disagree.

In Sherer, this Court held, pursuant to Tennessee Code Annotated sections 56-7-1201(a) and -1204 (2000), that an uninsured motorist carrier's subrogation rights are limited to only those injuries for which the provider made payment to the insured. 29 S.W.3d at 454. More specifically, the Greens argue that the Sherer Court did not allow the uninsured motorist carrier to limit its liability by the amounts the insured received from a non-motorist tortfeasor. Id. However, the Greens' reliance on Sherer is misplaced. First, Sherer dealt with an insurer's *subrogation* rights pursuant to Tennessee Code Annotated section 56-7-1204.[12] Id. The instant case does not involve subrogation; therefore, section 1204 is not applicable. Second, Sherer dealt with damages recoverable in a products liability action for "enhanced injuries."[13] Id. at 453. Such injuries are not at issue in the instant case. For these reasons, Sherer is not helpful to our resolution of this case.

Instead, we find this Court's holding in Poper ex rel. Poper v. Rollins, 90 S.W.3d 682 (Tenn. 2002), to be dispositive. In Poper, a motorist died from injuries she sustained in a multi-vehicle accident. The decedent's husband filed wrongful death actions against the drivers of the vehicles involved and a products liability suit against the manufacturer of the decedent's automobile, General Motors Corporation ("GM"). Similar to the facts in the case presently before this Court, the decedent's husband entered into settlement agreements with several defendants. Specifically, the husband received $130,000.00 from all but one of the drivers involved in the accident and $400,000.00 from GM, a non-motorist defendant. The remaining defendant, who had a liability limit of $10,000.00 under his automobile insurance policy, offered to settle through his insurer for the full policy amount. Rejecting the offer, decedent's husband filed suit against his wife's uninsured motorist carrier arguing that it "was liable for the amount by which its limits on uninsured motorist liability ($100,000.00) exceeded the limits of liability under [the defendant's] insurance policy ($10,000.00)." Id. at 683. The uninsured motorist carrier, however, denied liability arguing that it had no further obligation under the policy because the amounts the decedent's husband received from the settlements ($530,000.00) exceeded the limits of liability under the policy ($100,000.00). The trial court and Court of Appeals agreed with the uninsured motorist carrier and

_____

[12] Tennessee Code Annotated section 56-7-1204 is titled "Payment by insuror - Subrogation." Thus, this section's application is limited to instances where an insuror has made "payment to any person under the coverage required by [the uninsured motorist statutes]." Id.

[13] In Sherer, "enhanced injuries" were characterized as "injuries that were actually and proximately caused by [a] defective product." 29 S.W.3d at 455 n.1. Additionally, although discussing the application of comparative fault principles, the Sherer Court explained that these principles applied when "the defective product did not cause or contribute to the underlying accident but did cause 'enhanced injuries.'" Id. at 455.

held that, pursuant to Tennessee Code Annotated section 56-7-1201(d) (2000), "the total settlement recovery received by [decedent's husband] could be used to offset [the uninsured motorist carrier's] liability under the uninsured motorist policy." Id. at 684 (emphasis omitted).

On appeal, this Court held that the uninsured motorist statutes unambiguously allow "an uninsured motorist insurance carrier to limit its liability by offsetting '*all* liability and/or primary uninsured motorist insurance polices, bonds, and securities applicable to the bodily injury or death of the insured.'" Id. at 685 (quoting Tenn. Code Ann. § 56-7-1201(d)) (emphasis in original). Moreover, this Court held that the system of comparative fault, as adopted in McIntyre v. Balentine, 833 S.W.2d 52 (Tenn. 1992), did not affect the unambiguous language of these statutes. Id. at 687; see Erwin v. Rose, 980 S.W.2d 203, 207 (Tenn. Ct. App. 1998) (stating that "[w]hile McIntryre v. Balentine did abolish joint liability, we do not think it changed the statutes that govern uninsured-underinsured motorist insurance or the private contract policy provisions that have been consistently construed to give the insurance company the credit it seeks").

When dealing with statutory construction, this Court is "'to ascertain and give effect to' the legislative purpose without unduly restricting or expanding a statute's coverage beyond its intended scope." Poper, 90 S.W.3d at 684 (citing Mooney, 30 S.W.3d at 306). It is not for this Court to question the wisdom of a statutory scheme, but instead, to construe and apply the law as written. Carson Creek Vacation Resorts, Inc. v. Dept. of Revenue, 865 S.W.2d 1, 2 (Tenn. 1993). We determine legislative intent by applying "the natural and ordinary meaning of the language" without forcing or conjuring an interpretation that expands or limits its application. Id. Moreover, this Court "presume[s] that the legislature says in a statute what it means and means in a statute what it says there." Gleaves v. Checker Cab Transit Corp., 15 S.W.3d 799, 803 (Tenn. 2000) (quoting BellSouth Telecomms., Inc. v. Greer, 972 S.W.2d 663, 673 (Tenn Ct. App. 1997)).

The language of the uninsured motorist statutes was unambiguous at the time Poper was decided, and it is unambiguous now. The General Assembly has made no distinction between motorist and non-motorist tortfeasors in determining what offsets uninsured motorist carriers are entitled to receive. Contrary to the Greens' argument that there should be a distinction between monies received from "owners and operators of uninsured motorist vehicles" as compared to non-motorist tortfeasors, subsection 56-7-1201(d) specifically entitles uninsured motorist carriers to limit their liability by "the sum of the limits collectible under *all* liability and/or primary uninsured motorist insurance policies, bonds, and securities applicable to the bodily injury or death of the insured." Tenn. Code Ann. § 56-7-1201(d) (emphasis added). Therefore, applying the plain meaning of section 56-7-1201(d) to this case, State Farm clearly and unambiguously is allowed to offset any amounts the Greens received from the Settlement against the amounts owed under the Policy. And, because the Greens' settlement proceeds were equal to or greater than State Farm's limit of liability under the Policy, State Farm has no remaining liability. Accordingly, the trial court and Court of Appeals correctly granted State Farms' motion for summary judgment.

Although our holding in Poper was predicated on our finding that the uninsured motorist statutes are unambiguous, any doubt as to the intended meaning of the statutes was removed by the

General Assembly subsequent to its release. In 1999, the legislature amended the uninsured motorist statutes by adding several subsections to section 56-7-1206. Act of June 17, 1999, 1999 Tenn. Pub. Acts ch. 506, § 1. Included in these subsections is the following language:

> The uninsured motorist insurance carrier shall be entitled to credit for the total amount of damages collected by the insured *from all parties alleged to be liable* for the bodily injury or death of the insured whether obtained by settlement or judgment and whether characterized as compensatory or punitive damages.

Tenn. Code Ann. § 56-7-1206(i) (2000) (emphasis added). While this Court has never previously addressed the intent or stated purpose of this subsection, in our view, the language is clear and unambiguous.[14] Uninsured motorist coverage providers are entitled to a "credit[15] for the total amount of damages collected by the insured from *all* parties alleged to be liable . . . ." Id. (emphasis added). In adding this language, the legislature reiterated that there is to be no distinction between motorist and non-motorist tortfeasors in determining what credits uninsured motorist carriers are entitled to receive. Again, contrary to the Greens' argument that there should be a distinction between monies received from owners and operators of uninsured motorist vehicles as compared to non-motorist tortfeasors, subsection (i) specifically entitles uninsured motorist carriers to offset the amounts due under the uninsured motor vehicle policy provisions by "the *total* amount of damages collected by the insured from *all* parties alleged to be liable." Id. (emphases added). Moreover, this subsection explicitly states that "the total amount" leading to a credit includes monies from settlements or judgments, whether characterized as compensatory or punitive. Id. Therefore, applying the plain meaning of section 56-7-1206(i) to this case, even in the absence of subsection 56-7-1201(d), State Farm clearly and unambiguously is allowed to offset any amounts the Greens received from the Settlement against the amounts owed under the Policy.

*Tennessee Code Annotated section 56-7-1205 (2000)*

---

[14] In Poper, this Court recognized that the General Assembly had amended the uninsured motorist statutes by incorporating the language codified at section 56-7-1206(i). 90 S.W.3d at 685 n.2. However, we did not rely on the amended language there because the amendment did not take effect until after the commencement of the case.

[15] Although the question before this Court is whether State Farm is entitled to "offsets" rather than "credits," these words, in the context of uninsured motorist statutes, are interchangeable. See Erwin, 980 S.W.2d at 207 (holding that the adoption of comparative fault did not change the statutes governing uninsured-underinsured motorist policy provisions "that have been consistently construed to give [insurance companies] the credit [they] seek[]"); see also Am. Universal Ins. Co. v. DelGreco, 530 A.2d 171, 173 (Conn. 1987) (finding, in discussion of an uninsured motor coverage provider's entitlement to two setoffs, that "[t]he parties stipulated that the [uninsured motorist carrier] is entitled to a credit [in the first instance]"); Shatzer v. Globe Am. Cas. Co., 639 N.W.2d 1, 4-5 (Iowa 2001) (stating, in discussion of cases where credits and reductions had been granted to the uninsured motorist coverage provider, that "[i]n each case, we permitted [an] offset of benefits"); Vassiliu v. Daimler Chrysler Corp., 839 A.2d 863, 866 (N.J. 2004) (holding, where determining whether uninsured motorist carriers are entitled to a credit for settlement amounts received by an insured from a non-motorist tortfeasor, that uninsured motorist policies "include provisions concerning whether [uninsured motorist] carriers are entitled to credits or setoffs for settlements").

Next, without addressing either Tennessee Code Annotated sections 56-7-1201(d) or -1206(i), the Greens argue that allowing State Farm to offset the Settlement amounts against the amounts owed under the Policy is contrary to Tennessee Code Annotated section 56-7-1205, which provides:

> Nothing contained in this part shall be construed as requiring the forms of coverage provided pursuant to this part, whether alone or in combination with similar coverage afforded under other automobile liability policies, to afford limits in excess of those that would be afforded had the insured thereunder been involved in an accident with a motorist who was insured under a policy of liability insurance with the minimum limits described in [section] 55-12-107, or the uninsured motorist liability limits of the insured's policy if such limits are higher than the limits described in [section] 55-12-107. *Such forms of coverage may include such terms, exclusions, limitations, conditions, and offsets, which are designed to avoid duplication of insurance and other benefits.*

Tenn. Code Ann. § 56-7-1205 (emphasis added).

The Greens assert that the plain language of this section allows an uninsured motorist carrier to include offset provisions in its policies only to prevent an insured from receiving a duplication of payments *with respect to owners and operators of uninsured motor vehicles*. That is, the Greens surmise that the legislature's intent to allow offsets "to avoid duplication" is limited to the narrow circumstance in which an insured: (1) is injured or suffers property damage as a result of an accident with an uninsured motor vehicle; (2) is nonetheless able to recover monies from the owner and/or operator of the uninsured motor vehicle; and (3) then attempts to recover the *maximum* limits of liability from the uninsured motorist carrier pursuant to the terms of the uninsured motorist policy. Applying the Greens' interpretation of section 56-7-1205 to the facts in this case, State Farm would only be able to offset monies the Greens received from Ms. Johnson and Ms. Connor. This interpretation of the statute, however, is not in accordance with well-established case law.

In Terry v. Aetna Casualty & Surety Co., 510 S.W.2d 509, 513 (Tenn. 1974), we addressed the legislative purpose of section 56-7-1205, originally enacted as Tennessee Code Annotated section 56-1152 (1967), as follows:

> Under our research there appears [sic] to be two theories in regard to offset provisions in policies containing uninsured motorist coverage based on the legislative intent in the enactment of uninsured motorist statutes. The first theory is based on a finding the legislative purpose of such statutes is to provide full coverage up to the policy limits so long as payments under the uninsured motorist coverage, plus any payments received from other sources, do not exceed insured's actual damage. This is termed broad coverage and any offsets in the policies inhibiting such full coverage are held void. The second theory is based on a finding the legislative purpose of such statutes is to provide insured a recovery only up to the statutory minimum required

without regard to insured's actual damages, unless such be less than the statutory minimum. This is termed limited coverage and under such, by virtue of set-off [sic] provisions in a policy, an insured's statutory minimum coverage can be reduced by amounts received from other sources.

Taking these two theories into consideration and comparing the language of section 56-7-1205 with that of uninsured motorist statutes adopted by other states, this Court determined that enactment of this section "denote[d] a legislative purpose to provide less than broad coverage."[16] Id. Accordingly, this Court held:

> [B]y the enactment of [Tennessee Code Annotated section 56-7-1205] as a section of our uninsured motorist statutes, it is the legislative purpose to provide an insured motorist a right of recovery under the uninsured motorist provisions of his policy only up to the statutory required minimum ([Tennessee Code Annotated section 56-12-107 (2000), originally section 56-1148 (1967)]), and provisions in such policies, approved by the Commissioner of Insurance, operating to reduce such coverage where other coverage or benefits are available to the insured arising from accident causing the loss, are valid if such provisions do not operate to deny payments to an insured of less than the statutory minimum.

Id. at 513-14.

The following year, this Court again addressed section 56-7-1205 in State Automobile Mutual Insurance Co. v. Cummings, 519 S.W.2d 773 (Tenn. 1975). In Cummings, we stated that "[w]hile we do not applaud either the draftsmanship or the existence of [Tennessee Code Annotated section 56-7-1205], we must give it the effect that its reasonable construction demands." Id. at 775. Accordingly, we held that "section [56-7-1205] must be construed as authorizing policy provisions that may validly limit the recovery of a tort victim insured by uninsured motorist coverage to a maximum collection of [the minimum statutory limit] (or the policy limits) from all insurance or other benefits available to [the insured]." Id.

Although this Court has addressed section 56-7-1205 several times since Cummings, see Hudson v. Hudson Municipal Contractors, Inc., 898 S.W.2d 187 (Tenn. 1995); Tata v. Nichols, 848 S.W.2d 649 (Tenn. 1993); Rogers v. Tennessee Farmers Mutual Insurance Co., 620 S.W.2d 476, 482-83 (Tenn. 1981) (Brock, J., dissenting), the discussion of the section in each case was limited to issues not presently before this Court. The Court of Appeals, however, has addressed a factual scenario similar to the one in the present case, and found, consistent with this Court's holdings in Terry and Cummings, that:

---

[16] The effect of the General Assembly's decision to provide "less than broad coverage" allows uninsured motorist carriers to avoid paying benefits under coverage for which an insured has paid premiums, as long as the insured can collect those benefits elsewhere-even though this practice can leave the insured far less than "whole."

-9-

[Tennessee Code Annotated section] 56-7-1205 [] permits the insuror, by contract, to offset its liability to the insured by *whatever amount of money from whatever source the insured may receive it, if the money from the outside source would be a duplication of the amount agreed to be paid by the insuror.*

Erwin, 980 S.W.2d at 209 (quoting Thompson v. Parker, 606 S.W.2d 538, 540 (Tenn. Ct. App. 1980)) (emphasis added).[17]

Although the language of section 56-7-1205 has been slightly altered[18] since our holdings in Terry and Cummings, the legislative purpose of this section has not changed. Each of these cases makes clear that the legislature's intent is to allow uninsured motorist carriers to limit their liability when an insured is able to collect monies elsewhere, no matter the source. Moreover, taking into consideration amendments to this section, and other sections of the uninsured motorist statutes, see Tenn. Code Ann. §§ 56-7-1201(d), -1206(i), our findings in Terry and Cummings have been reaffirmed by the actions of the General Assembly. For this reason, we do not agree with the Greens' argument that section 56-7-1205 prevents State Farm from providing in the Policy a provision allowing it to offset its liability by the amounts the Greens received from the Settlement. Rather, in light of our legislature's intent, the monies the Greens received in the Settlement from the non-motorist defendants, which arose out of an accident caused by an uninsured motor vehicle, are "duplicative" of the monies owed by State Farm under the Policy, and therefore, are subject to setoff.

## Conclusion

Tennessee Code Annotated section 56-7-1201(d) unambiguously allows an uninsured motorist carrier to limit its liability by "the sum of the limits collectible under all liability and/or primary uninsured motorist insurance polices, bonds, and securities applicable to the bodily injury or death of the insured." Tennessee Code Annotated section 56-7-1206(i) clearly allows for an offset or credit for "the total amount of damages" received by the insured from "all parties alleged to be liable." Therefore, pursuant to the uninsured motorist statutes, Tennessee Code Annotated sections

---

[17] In Erwin, the insured, who had a $100,000.00 limit of liability under her parents' uninsured motorist policy, was killed when a police officer lost control of his vehicle during a high speed chase and hit the insured's car head on. The driver of the vehicle being pursued by the police had a $25,000.00 limit of liability automobile policy. The insured's parents collected $25,000.00 from the defendant driver and an additional $130,000.00 from the county in which the police officer was employed. The insured's parents brought suit against their uninsured motorist carrier arguing that they were entitled to receive $75,000.00 from the carrier, this amount being equal to their limit of liability ($100,000.00) less the amount received from the underinsured defendant driver ($25,000.00). Both the trial court and Court of Appeals disagreed with the insured's parents, however, and instead found that the uninsured motorist carrier could offset its liability by the total amounts received from the defendant driver and the county. 980 S.W.2d at 207.

[18] In 1974, the General Assembly added language to section 56-7-1205 to clarify that an insured had uninsured motorist coverage for both uninsured and underinsured motorists. Compare Tenn. Code Ann. § 56-7-1205 (1968), with Tenn. Code Ann. § 56-7-1205 (2000) (which includes the additional clause "or the uninsured motorist liability limits of the insured's policy if such limits are higher than the limits described in section 55-12-107").

56-7-1201 to -1206, State Farm is entitled to a credit or offset equal to the Greens' Settlement proceeds. Because the Settlement proceeds are equal to or greater than State Farm's limit of liability under the Policy, State Farm's liability in this case is extinguished. Therefore, we affirm the trial court and Court of Appeals' grants of summary judgment to State Farm. Costs of this appeal are assessed to the Greens, and their surety, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, JUSTICE