IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 02, 2014 Session

## DIANA L. POWELL, ET AL. V. PENNY D. CLARK

**Appeal from the Circuit Court for Rutherford County**
No. 62933      Robert E. Corlew, III, Judge, sitting by interchange

No. M2014-01083-COA-R3-CV - **Filed February 3, 2015**

This appeal involves a limitation of liability in an insurance policy.   Appellant Allstate Insurance Company seeks reduction of its uninsured motorist liability by amounts paid by Appellee insured's automobile insurance carrier.  In light of the legislative intent that offsets should be limited to monies received from legally responsible parties or entities, and the limiting language used in the Allstate policy, we conclude that the trial court correctly denied the offset in this case.  Affirmed and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is
Affirmed and Remanded.**

KENNY ARMSTRONG, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Alan M. Sowell, Nashville,  Tennessee, for the appellant, Allstate Insurance Company.

Michael D. Galligan and Susan N. Marttala, McMinnville, Tennessee, for the appellees, Diana and Ronald Powell.

### OPINION

### I. Background

1

The relevant facts in this case are not in dispute. On July 1, 2012, Diana Powell was riding as a guest passenger in a vehicle driven by Patricia Collins. Ms. Collins' vehicle was struck by a vehicle that was driven by Penny Clark. There is no dispute that Ms. Clark was 100% at fault for the collision. However, Ms. Clark never appeared in the case and was an uninsured motorist at the time of the accident.

Ms. Powell was insured by State Farm. Her policy included uninsured motorist limits of $100,000.00. Her policy also provided medical payments coverage in the amount of $100,000.00. Patricia Collins was insured by Allstate Insurance Company ("Allstate," or "Appellant"). Her policy likewise provided an uninsured motorist coverage limit of $100,000.00. However, Ms. Collins' policy only provided for medical payments coverage in the amount of $2,000.00.

There is no dispute that Allstate, rather than State Farm, is the primary carrier for uninsured motorist coverage with respect to this accident. *See* Tenn. Code Ann. §56-7-1201(b)(3).[1] Allstate paid Ms. Powell $2,000.00 under the medical portion of Ms. Collins' policy. Thereafter, State Farm, under its policy, paid medical payments in the amount of $70,021.32 on behalf of Ms. Powell.

Ms. Powell and her husband Ronald (together the "Powells," or "Appellees") filed suit against Penny Clark on June 27, 2011. A summons was issued for State Farm as the uninsured motorist carrier for the Powells. A summons was also issued for Allstate as the uninsured motorist carrier for Ms. Collins. State Farm filed its answer on July 28, 2011. Allstate filed its answer on August 1, 2011. As noted above, the named defendant, Ms. Clark, never made an appearance. On September 2, 2011, an agreed order of dismissal was entered as to State Farm.

On October 30, 2012, the Powells filed a motion for declaratory judgment, asking the trial court to determine that Allstate was not entitled to offset the medical payments made by State Farm against Allstate's uninsured motorist limits. On December 3, 2012, the trial court

---

[1] Tennessee Code Annotated Section 56-7-1201(b)(3) provides:

> (3) With respect to bodily injury to an insured while occupying an automobile not owned by the insured, the following priorities of recovery under uninsured motorist coverage apply:
> (A) The uninsured motorist coverage on the vehicle in which the insured was an occupant shall be the primary uninsured motorist coverage;

issued a memorandum opinion, in which it specifically held that "Allstate Insurance is not allowed to setoff payments made by State Farm Mutual Insurance to or on behalf of the Plaintiff for medical expenses for treatment of injuries the Plaintiff received in the accident at issue." In so holding, the trial court reasoned, in relevant part, as follows:

> [T]he clear language of the Allstate policy. . . provides that Allstate is entitled to a setoff for the $67,500 paid by State Farm. The practical application of such a decision, however, is far-reaching. First, because State Farm has the right of subrogation under the terms of its policy, Allstate would effectively be able to preclude any such recovery by State Farm. Thus, by stepping up promptly to provide relief for its insured, State Farm would be in the position of saving money for Allstate while expend[ing] its own dollars which otherwise would have been paid first by Allstate to the injured party, and then potentially recouped by State Farm. Were this rule to be enforced, the obvious result would be the position of insurers that they will not pay until all other sources of payment have been made.

The trial court further reasoned that:

> The Allstate policy appears to show that the maximum payment the Plaintiff could receive under that policy is $100,000, including all payments from other sources. Though the State Farm policy is not exhibited, State Farm's pleadings before they were dismissed from the action show that State Farm was wanting to be credited for the medical payments it made against the $100,000, including medical payments. Because the law provides that the Allstate policy provides primary coverage, then State Farm should not be required to make payments until the Allstate policy is exhausted. Were we to allow Allstate an offset then Allstate would pay some $32,500 and State Farm would pay some $67,500.

> [I]nsurance companies cannot be required to pay for losses in excess of the limits to which they have agreed. . . . The proof before us shows that the terms of each policy provide that an injured Plaintiff is entitled to a maximum of $100,000 including all payments. Thus, Allstate, which provides the primary

3

coverage, should be required to pay its limits if the evidence justifies an award of $100,000 or more, and then State Farm is entitled to subrogation as to the payments which it advanced.

Because the law provides that the Allstate policy of insurance is primary, we find that Allstate should be required to pay the entire limits of their policy to the extent that the evidence justifies such payments. . . . [W]ere we to find that Allstate is entitled to the setoff it claims, State Farm would pay at least twice the sum that Allstate pays ($67,500 versus $32,500), and the net effect of such a ruling would be that the State Farm policy was actually primary, at least to the extent of the costs of medical care. Such a decision would be in derogation of the provisions of Tennessee law.

On March 14, 2013, the trial court entered an order on the motion for declaratory judgment, in which it reiterated its findings and concluded that Allstate was not entitled to offset the State Farm payment.

On March 25, 2013, Allstate filed a motion for interlocutory appeal under Tennessee Rule of Appellate Procedure 9. Although the trial court granted the motion for interlocutory appeal, this Court denied hearing the Rule 9 appeal by order of June 12, 2013. A final hearing on the issue of damages was held by the trial court on April 17, 2014. By order of May 22, 2014, the trial court held:

[T]he Court found that Plaintiffs are entitled to the sum of $200,000.00 for injuries sustained in the automobile accident from which this case arose. It is undisputed that Allstate Insurance Company, the primary uninsured motorist carrier in this case, has previously paid the sum of $2,000.00 to Plaintiffs under the Medpay provisions of the uninsured motorist coverage applicable to this case. It is further undisputed that Allstate's uninsured motorist limits of liability are $100,000.00.

IT IS THEREFORE ADJUDGED AND DECREED that Plaintiffs are awarded damages against the Defendant, Penny D. Clark, in the amount of $200,000.00 for injuries sustained in the automobile accident out of which this case arose.

IT IS FURTHER, ORDERED, ADJUDGED AND

4

DECREED that the Plaintiffs shall take judgment against Allstate Insurance Company in the amount of the uninsured motorist limits of $100,000.00, less $2,000.00 for the amount previously paid to Plaintiffs under the Medpay provisions of the policy. The Plaintiffs shall have judgment against Allstate Insurance Company, therefore, in the amount of $98,000.00.

## II. Issue

Allstate appeals. The sole issue for review is whether Allstate is entitled to reduce its uninsured motorist limits by amounts paid by the Appellee's automobile insurance carrier.

## III. Standard of Review

The issue in this appeal requires us to interpret both the language of the Allstate insurance policy, and the relevant Tennessee uninsured motorist statutes. Accordingly, our analysis is guided by several well-established principles. First, Tennessee law is clear that questions regarding the extent of insurance coverage present issues of law involving the interpretation of contractual language. *Clark v. Sputniks, LLC*, 368 S.W.3d 431, 436 (Tenn. 2012); *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 703 (Tenn. 2008). Likewise, questions regarding the interpretation of a statute involve issues of law. *In re Estate of Trigg*, 368 S.W.3d 483, 490 (Tenn. 2012). Therefore, our standard of review is *de novo* with no presumption of correctness afforded to the conclusions reached by the trial court. *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386 (Tenn. 2009).

## IV. Analysis

### A. Applicable Statutory Language

Before turning to the applicable sections of Tennessee's uninsured motorist law, we first note that

> [uninsured/underinsured motorist] statutes, as a matter of law, become provisions of all automobile insurance policies issued for delivery in Tennessee. Where there is a conflict between a statutory provision and a policy provision, the statutory provision must prevail.

*Sherer et al. v. Linginfelter et al.*, 29 S.W.3d 451, 454 (Tenn. 2000) (citing *Fleming v. Yi*,

5

982 S.W.2d 868, 870 (Tenn. Ct. App. 1998)).

When interpreting a statute, courts "must ascertain and give effect to the legislative intent without restricting or expanding the statute's intended meaning." *U.S. Bank*, 277 S.W.3d at 386. Our task is to examine the text of the statute and, if the language used is unambiguous, we simply apply the plain meaning of the words used in the statute. *Nye v. Bayer Cropscience, Inc.*, 347 S.W.3d 686, 694 (Tenn. 2011); *U.S. Bank*, 277 S.W.3d at 386. As the Tennessee Supreme Court recently observed, courts "must (1) give these words their natural and ordinary meaning, (2) consider them in the context of the entire statute, and (3) presume that the General Assembly intended to give each of these words its full effect." *In re Estate of Trigg*, 368 S.W.3d at 490. Every word in a statute is presumed to have meaning and purpose. *Nye*, 347 S.W.3d at 694; *Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d 695, 701 (Tenn. 2009). If, after examining the text of the statute, it becomes clear the statute is ambiguous, "we may reference the broader statutory scheme, the history of the legislation, or other sources to discern its meaning." *Highwoods Props.*, 297 S.W.3d at 701; *see also Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012) ("When necessary to resolve a statutory ambiguity or conflict, courts may consider matters beyond the statutory text, including public policy, historical facts relevant to the enactment of the statute, the background and purpose of the statute, and the entire statutory scheme."). "However, these non-codified external sources cannot provide a basis for departing from clear codified statutory provisions." *Mills*, 360 S.W.3d at 368 (internal quotation marks omitted).

Concerning limits of liability for an insurer under its uninsured motorist coverage, Tennessee Code Annotated Section 56-7-1201(d) states:

> (d) The limit of liability for an insurer providing uninsured motorist coverage under this section is the amount of that coverage as specified in the policy less the sum of the limits collectible under all liability and/or primary uninsured motorist policies. . .applicable to the bodily injury or death of the insured.

The insurer providing the uninsured motorist coverage is also entitled to subrogation as provided under Tennessee Code Annotated Section 56-7-1204:

> (a) In the event of payment to any person under the coverage required by this part, and subject to the terms and conditions of the coverage, the insurer making payment shall, to the extent of the coverage, be subrogated to all of the rights of the person to whom payment has been made, and shall be entitled to the proceeds of any settlement or judgment resulting from the

6

exercise of any rights of recovery of the person against any person or organization **legally responsible** for the bodily injury or property damage for which payment is made. . .

(Emphasis added). Importantly, the subrogation provisions, when read *in pari materia* with the other uninsured motorist statutes, "allow[] the insurer to recover from its insured only those amounts received from persons or entity causing those same damages." Tenn. Code Ann. §56-7-1204, cmt. 1; *Sherer*, 29 S.W.3d at 454.

Tennessee Code Annotated Section 56-7-1205 provides, in pertinent part, that:

Nothing contained in this part shall be construed as requiring the forms of coverage provided pursuant to this part, whether alone or in combination with similar coverage afforded under other liability policies, to afford limits in excess of those that would be afforded had the insured under the policies been involved in an accident with a motorist who was insured under a policy of liability insurance with the minimum limits described in §55-12-107, or the uninsured motorist liability limits of the insured's policy if the limits are higher than the limits described in in §55-12-107. The forms of coverage may include terms, exclusions, limitations, conditions, and offsets that are designed to avoid duplication of insurance and other benefits.

Tennessee courts have interpreted the statutory language, "[t]he forms of coverage may include terms, exclusions, limitations, conditions, and offsets . . .," to provide "limited coverage." In *Terry v. Aetna Casualty & Surety Co.*, 510 S.W.2d 509 (Tenn. 1974), our Supreme Court explained that limited coverage theory "is based on a finding [that] the legislative purpose. . .is to provide insured a recovery only up to the statutory minimum required without regard to insured's actual damages, unless such be less than the statutory minimum." *Id*. at 513. As noted by this Court, "[t]he uninsured motorist insurance carrier is entitled to a credit to offset its liability by any recovery received by the insured from whatever source that would result in duplication of the amount to be collected under the uninsured motorist coverage." *Clark v. Shoaf*, 302 S.W.3d 849, 856 (Tenn. Ct. App. 2008). Accordingly, the usual uninsured motorist endorsements provide for reduction of the uninsured motorist limits for (a) payments made under the liability or medical payment feature of the policy; (b) amounts paid under any workers' compensation law, disability benefits law, or similar law; and (c) all sums paid by or on behalf of persons or organizations who may be legally responsible. *See generally* Phillip A. Fleissner & Paul Campbell III, <u>Tennessee Automobile Liability Insurance</u> § 18.2 (2007-08 ed.); *see, e.g., Green v. Johnson*,

249 S.W.3d 313 (Tenn. 2008) (holding that insurer was allowed to offset any amounts insured received from settlement with non-motorist tortfeasors against the amounts owed under underinsured motorist policy); *Poper ex rel. Poper v. Rollins,* 90 S.W.3d 682 (Tenn. 2002) (holding that insurer was entitled to offset amounts collected by insured in settlement with other defendants); *Giannini v. Proffitt*, No. W2011–00342–COA–R3–CV, 2012 WL 1478785 (Tenn. Ct. App. April 27, 2012) (holding that the limitation of liability language in uninsured motorist policy, reducing insurer's liability by sums paid under laws similar to workers' compensation laws, applied to preclude recovery); *Sherlin v. Hall*, 237 S.W.3d 647 (Tenn. Ct. App. 2007) (holding that the limits of liability of the uninsured motorist coverage policy were reduced and, in fact, negated by the amount of the workers' compensation benefits paid to insured).

## B.  Relevant Contract Language

Also well-established in Tennessee is the principle that "[i]nsurance policies are, at their core, contracts." *Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 527 (Tenn. 2012) (Koch, J., dissenting). As such, courts interpret insurance policies using the same tenets that guide the construction of any other contract. *Am. Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 814 (Tenn. 2000). Thus, the terms of an insurance policy "'should be given their plain and ordinary meaning, for the primary rule of contract interpretation is to ascertain and give effect to the intent of the parties.'" *Clark*, 368 S.W.3d at 441 (quoting *U.S. Bank*, 277 S.W.3d at 386–87). The policy should be construed "as a whole in a reasonable and logical manner," *Standard Fire Ins. Co. v. Chester–O'Donley & Assocs.*, 972 S.W.2d 1, 7(Tenn. Ct. App.1998), and the language in dispute should be examined in the context of the entire agreement. *Cocke City Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn.1985).

In addition, contracts of insurance are strictly construed in favor of the insured, and if the disputed provision is susceptible to more than one plausible meaning, the meaning favorable to the insured controls. *Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn.1993); *VanBebber v. Roach*, 252 S.W.3d 279, 284 (Tenn. Ct. App. 2007). However, a "strained construction may not be placed on the language used to find ambiguity where none exists." *Farmers–Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn.1975).

Part V of the Allstate policy is titled "Uninsured Motorist Insurance Coverage."  This part contains the following, relevant language under the "Exclusions–What is not Covered" section:

**Limits of Liability**

\*                                     \*                                     \*

Limits payable will be reduced by all amounts paid or payable by the owner or operator of the uninsured auto or anyone else responsible. This includes all sums collected or collectible under the bodily injury liability coverage of this or any other policy and all sums collected or collectible under the uninsured motorist coverage of this or any other policy.

\*                                     \*                                     \*

2. Damages payable will be reduced by:

a) all amounts paid by or on behalf of the owner or operator of the uninsured auto, including an uninsured auto or anyone else responsible. This includes all sums paid under the bodily injury liability coverage or property damage liability coverage of this or any other auto policy.

b) all amounts paid or payable under any workers compensation law, disability benefits law, or similar law, Automobile Medical Payments, or any similar medical payments coverage under this or any other auto policy. . . .

Allstate contends that the language "Automobile Medical Payments, or any similar medical payments coverage under this or any other auto policy. . ." allows it to offset the $70,021.32 in medical payments that were paid on Ms. Powell's behalf under her own State Farm policy. In this regard, the instant case is similar to *Elsner v. Walker*, 879 S.W.2d 852 (Tenn. Ct. App. 1994), *perm. app. denied* (Tenn. June 13, 1994). In *Elsner*, the uninsured motorist policy provided that "the limit of liability shall be reduced by all sums paid because of bodily injury or property damage by or on behalf of persons or organizations who may be legally responsible." *Id*. at 853. As in this case, in *Elsner*, the insurer sought a setoff for medical insurance coverage provided to the plaintiffs by their own medical insurance carrier. *Id*. This Court interpreted the language, "persons or organizations who may be legally responsible," to mean "that the insurer intends to reduce its liability by the amount received from others **who are responsible for the damage** or injury." *Id*. at 854 (emphasis added). The *Elsner* Court noted that the insurance contract at issue in that case did not contain "an explicit, plain statement that the [insurer's] liability would be reduced by sums paid by an insured's medical

9

insurance carrier." *Id*. The Court further noted that if the insurer had intended that it be entitled to a reduction for payments of an insured's medical insurance, it could have included such a provision. *Id*.

As noted by this Court in *Elsner*, courts interpreting offset language have "found that liability may be reduced by all sums paid because of bodily injury or property damage **by or on behalf of persons or organizations legally responsible for injury or damage**." *Id*. at 854 (emphasis added) (citing *Brinkman v. Aid Ins. Co.*, 766 P.2d 1227, 1233-34 (Idaho 1988) (rejecting insurer's argument that it could reduce its liability by the value of a college scholarship granted to insured as a result of injuries insured sustained in automobile accident); *Aills v. Nationwide Mutual Ins. Co.*, 363 S.E.2d 880 (N.C. 1988) (dismissing insurer's argument that the plaintiff's uninsured motorist coverage should be reduced by medical payments made under another provision of the automobile policy and disability payments made through a separate disability policy).

While the insurer in *Elsner* ostensibly sought to nullify the qualifying term "by or on behalf of persons or organizations who may be **legally responsible**," in *Edmondson v. Solomon*, No. 01A01-9802-CV-00097, 1999 WL 11512 (Tenn. Ct. App. 1999), the insurer sought to have this Court nullify the term "law," i.e., "we will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar **law**." *Id*. at *1. In *Edmondson*, we held that the offset was not allowed for payments under employer's and personal disability policies because these payments were not made under any disability benefits law. *Id*. at *3; *but see Giannini v. Proffitt*, No. W2011-00342-COA-R3-CV, 2012 WL 1478785 (holding that sums paid under laws similar to workers' compensation laws, applied to limit insurer's uninsured motorist liability). In discussing the validity of various offset provisions in uninsured motorist coverage policies, Tennessee Automobile Liability Insurance § 18.2 cites the *Edmondson* case for the proposition that:

> While there is logical basis for offsetting payments by parties at fault, certain types of payments made by the insured's own automobile insurance carrier, and statutory workers' compensation or similar benefits, surely it is doubtful that the Commissioner of Insurance would allow filings diminishing [uninsured motorist] coverage by payments secured under an insured's individual or group health insurance or disability insurance plan.

*Id*. at n. 6. We concede that Tennessee's adoption of "limited coverage" has led to the primary objective of liberally allowing offsets so long as those offsets do not "result in

duplication of the amount to be collected under the uninsured motorist coverage." ***Clark,*** 302 S.W.3d 849; ***Boyce v. Geary***, No. 01-A-01-9409-CV-00410, 1995 WL 245389 (Tenn. Ct. App. April 28, 1995). However, there is also a more subtle concept of legal liability at play in the statutes and caselaw. This idea of liability is not specifically fault-based; rather, it rests upon the equitable notion that various offsets, although broadly construed to give effect to the limited coverage scheme our Legislature has adopted, should nonetheless be allowed only if such payments are made by the party at fault for the accident, or the person or entity legally responsible. ***Sherer***, 29 S.W.3d at 454 (holding that the uninsured motorist coverage statutes allow the insurer to recover from its insured only those amounts received from the person or entity causing those same damages).

We concede that the language employed in the Allstate policy is more specific than the language at issue in the ***Elsner*** policy in that the language here clearly contemplates offset for medical payments, i.e., "[d]amages payable will be reduced by. . . any similar medical payments coverage under this or any other auto policy." As noted above, insurance policies should be construed "as a whole in a reasonable and logical manner," ***Standard Fire Ins. Co. v. Chester–O'Donley & Assocs.***, 972 S.W.2d 1, 7 (Tenn. Ct. App.1998), and the language in dispute should be examined in the context of the entire agreement. ***Cocke City Bd. of Highway Comm'rs***, 690 S.W.2d at 237. In addition, as a matter of law, all provisions of the Tennessee Uninsured Motorist statute are made part of all insurance policies issued for delivery in Tennessee. *See **Dunn v. Hackett***, 833 S.W.2d 78 (Tenn. Ct. App. 1992). This means that we must interpret the policy language in light of the legislative intent as set out in the applicable portions of the uninsured motorist law. We have previously discussed the holding that the uninsured motorist coverage statutes allow the insurer to recover from its insured only those amounts received from the person or entity causing those same damages. This intent is acknowledged in the Allstate policy at issue here. The uninsured motorist coverage section of the policy, states that the "[l]imits payable will be reduced by all amounts paid or payable by the owner or operator of the uninsured auto **or anyone else responsible**" (emphasis added). While the specific reduction of damages language in the policy broadly states that damages payable will be reduced by "any similar medical payments coverage under this or any other policy," under well-settled contract interpretation principles, we must read this language *in pari materia* with the entire agreement. Accordingly, we read the broad exception for medical payments in light of the language set out in the same section of the policy that policy limits will be reduced by payments paid or payable by "anyone else responsible."

Here, there is no dispute that State Farm is not the legally responsible insurer. As discussed above, by statute, Allstate is the legally responsible uninsured motorist carrier in this case. Nonetheless, Allstate seeks to reduce its legal obligation to pay under the uninsured motorist section of the policy by monies paid by State Farm to its insured for medical coverage. To

allow such offset would not only contradict the contractual language that policy limits will be reduced by payments made by "anyone else responsible," but such interpretation would also violate the legislative intent to limit offsets to those monies paid or payable by the legally responsible parties.

In addition to not being the legally responsible entity in this case, *see* Tenn. Code Ann. §56-7-1201(b)(3)(A), State Farm may also have a right of subrogation against Allstate for the $70,021.32 it paid to the Powells.  Tenn. Code Ann. §56-7-1204.  The trial court's memorandum opinion indicates that State Farm pursued its subrogation right in this case.  Regardless, in **Bayless v. Pieper et al.**, No. M2008-01073-COA-R3-CV, 2009 WL 2632763 (Tenn. Ct. App. Aug. 26, 2009), we held that an insurer was not entitled to reduce its obligation under an uninsured motorist policy by setting off the portion of the liability benefits payment that were used to pay the workers' compensation subrogation interest.  **Id**. at *1.  The **Bayless** Court reasoned that "[a] holding to the contrary would cause the insured to suffer a double reduction in benefits resulting from a single settlement payment made by the tortfeasor's liability insurer."  **Id**. at *3 (citing **Boyce**, 1995 WL 245389 at *3).  Furthermore, such holding would "ignore language included in the statute to protect the rights of insureds against the otherwise unrestricted power of insurance companies to impose on them limitations and offsets which could effectively eliminate the benefits to which their premium payment entitles them."  **Id**.  In so holding, the court noted  that the "duplication" language in the statute is to "prevent the insured from receiving a windfall in benefits, not to empower insurers to receive a windfall in offsets or eliminate benefits they are obligated to pay."  **Id**. at *4.  The interpretation proposed by Allstate in this case would frustrate the legislative purpose and would ignore the contractual language allowing reduction of benefits by sums collected by "anyone else responsible."   Accordingly, we cannot interpret the disputed policy language to allow Allstate an offset for those payments made by State Farm in this case.

## V.  Conclusion

For the foregoing reasons, we affirm the order of the trial court.  The case is remanded for such further proceedings as may be necessary and are consistent with this opinion.  Costs of the appeal are assessed against the Appellant, Allstate Insurance Company, and its surety.

_____
KENNY ARMSTRONG, JUDGE

12