FILED
08/05/2022
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 17, 2022 Session

## CHRISTOPHER MCCOY v. KATELYN CONWAY ET AL.

**Appeal from the Circuit Court for Wilson County**
**No. 2020-CV-40     Michael Wayne Collins, Judge**

_____

### No. M2021-00921-COA-R3-CV

_____

The plaintiff was injured when his car was hit by an uninsured driver. The plaintiff was initially paid $5,000.00 from the medical payments coverage of his automobile policy. A jury then found the plaintiff's compensatory damages to total $80,000.00. The plaintiff's uninsured motorist carrier then paid the plaintiff $45,000.00, representing the policy limit of $50,000.00 less the prior $5,000.00 payment. The plaintiff then sought to compel the uninsured motorist carrier to pay the additional $5,000.00 owed under the uninsured motorist policy. The trial court agreed and ordered the uninsured motorist carrier to pay the plaintiff an additional $5,000.00, resulting in total payment by the carrier to the plaintiff of $55,000.00. The uninsured motorist carrier appeals. We reverse the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN and CARMA DENNIS MCGEE, JJ., joined.

Jay R. McLemore and Donald R. Ferguson, Franklin, Tennessee, for the appellant, Allstate Property and Casualty Insurance Company.

Neal Agee, Jr., Lebanon, Tennessee, for the appellee, Christopher McCoy.

## OPINION

### I. FACTUAL AND PROCEDURAL HISTORY[1]

---

[1] The parties in this case filed a Joint Stipulation for the Record in the Circuit Court of Wilson

On September 7, 2019, Plaintiff/Appellee Christopher McCoy was driving his car in Mt. Juliet, Tennessee, when he was rear ended by a vehicle driven by Katelyn Conway and owned by Courtland Douglas, neither of whom carried liability insurance coverage. Ms. Conway was intoxicated and eventually pled guilty to the charge of driving under the influence. Mr. McCoy filed a personal injury complaint against Ms. Conway and Mr. Douglas, who were served but failed to defend the lawsuit. At the time of the collision, Mr. McCoy was insured under an automobile liability insurance policy issued by Defendant/Appellant Allstate Property and Casualty Insurance Company ("Allstate"). Mr. McCoy's policy included bodily injury limits of $50,000.00 per person for Automobile Liability Insurance coverage and $50,000.00 per person for Uninsured Motorists Insurance coverage. Mr. McCoy's automobile liability insurance policy also included an optional Automobile Medical Payments benefit with coverage of $5,000.00 per person.

Mr. McCoy served Allstate notice of the personal injury complaint as his uninsured motorist carrier. In answering and defending the suit, Allstate pleaded its right to a credit or setoff for any payments made under Automobile Medical Payments coverage. Mr. McCoy's medical expenses resulting from the collision were in excess of $5,000.00. On December 4, 2020, Mr. McCoy filed itemized medical expenses in the total amount of $16,090.24 pursuant to Tennessee Code Annotated section 24-5-113(b). Before the trial occurred, Allstate tendered a check for $5,000.00 to Mr. McCoy, in satisfaction of the limits of his medical payments coverage. Mr. McCoy cashed the $5,000.00 check for medical payments on December 30, 2020.

On March 18, 2021, default judgment was entered against Ms. Conway and Mr. Douglas for failure to answer. On March 30, 2021, Mr. McCoy filed a Motion to Amend Complaint, seeking to withdraw his claim for medical expenses from the initial complaint, which motion was granted without objection. A jury trial occurred on April 13 and 14, 2021. Ms. Conway and Mr. Douglas did not appear. Mr. McCoy was present and represented by counsel. Allstate was also present, electing to defend in its own name. Mr. McCoy did not offer proof of or seek judgment for medical expenses, past or future. The jury returned the following verdict: "Physical pain and mental suffering — past $15,000; Physical pain and mental suffering — future $20,000; Permanent injury - $15,000; Loss of enjoyment of life — past $10,000 and Loss of enjoyment of life — future $20,000." Thus, the total verdict of compensatory damages was $80,000.00. The jury then returned a verdict for $40,000.00 in punitive damages. On April 26, 2021, the trial court entered judgment in favor of Mr. McCoy against Ms. Conway and Mr. Douglas for $80,000.00 in compensatory damages, and against Ms. Conway for $40,000.00 in punitive damages.

After the trial court entered judgment, Allstate paid Mr. McCoy $45,000.00. On May 25, 2021, Mr. McCoy filed a Motion to Compel Payment, requesting from Allstate an

County (the "trial court"), from which we have taken most of the following factual and procedural history.

additional $5,000.00, or the balance of his uninsured motorist coverage, for a total of $50,000.00. Mr. McCoy argued that Allstate was not entitled to an offset for medical payments previously made to him and Allstate was required to pay $50,000.00 toward the judgment. Allstate argued that its $50,000.00 uninsured motorist policy limits were offset by the $5,000.00 in medical payments to Mr. McCoy, thereby reducing its obligation to $45,000.00. A hearing on the motion occurred in the trial court on July 12, 2021. On July 15, 2021, the trial court entered an order granting Mr. McCoy's motion to compel payment and ordering Allstate to pay an additional $5,000.00.[2] Allstate appealed this order compelling payment.

## II. ISSUES PRESENTED

The sole issue in this appeal is whether the trial court erred in ordering Allstate to pay Mr. McCoy an additional $5,000.00 as full satisfaction of the uninsured motorist coverage.

## III. STANDARD OF REVIEW

In a similar case, this Court described the relevant standard of review as follows:

> The issue in this appeal requires us to interpret both the language of the Allstate insurance policy, and the relevant Tennessee uninsured motorist statutes. Accordingly, our analysis is guided by several well-established principles. First, Tennessee law is clear that questions regarding the extent of insurance coverage present issues of law involving the interpretation of contractual language. *Clark v. Sputniks, LLC*, 368 S.W.3d 431, 436 (Tenn. 2012); *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 703 (Tenn. 2008). Likewise, questions regarding the interpretation of a statute involve issues of law. *In re Estate of Trigg*, 368 S.W.3d 483, 490 (Tenn. 2012). Therefore, our standard of review is *de novo* with no presumption of correctness afforded to the conclusions reached by the trial court. *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386 (Tenn. 2009).

*Powell v. Clark*, 487 S.W.3d 528, 531–32 (Tenn. Ct. App. 2015).

## IV. ANALYSIS

Allstate argues that the trial court erred in denying its right to an offset of the medical payments it made to Mr. McCoy, which Allstate asserts it is entitled to under its contract with Mr. McCoy, Tennessee's uninsured motorist act, and established case law.

---

[2] The trial court's order provides no reasoning for its decision. Although we are aware of no law that requires a trial court to provide detailed reasoning when adjudicating motions of this type, such reasoning is helpful in facilitating appellate review.

Specifically, Allstate argues that it is entitled to reduce its uninsured motorist coverage limit of $50,000.00 by the amount it paid Mr. McCoy under the medical payment coverage policy ($5,000.00), such that its obligation to Mr. McCoy is satisfied by paying only an additional $45,000.00 to Mr. McCoy. In contrast, Mr. McCoy argues that the trial court correctly ordered Allstate to pay the full amount of the uninsured motorist coverage limit, $50,000.00, without an offset for the $5,000.00 in medical payments.

Here, the Automobile Medical Payments Coverage portion of the policy issued by Allstate to Mr. McCoy states, in part, as follows:

> **Non-Duplication**
> There will be no duplication of payments made under the **Automobile Medical Payments** coverage of this policy and any other coverage of this policy. All payments made to or on behalf of any person under this coverage will be considered as advance payments to that person. Any amount payable for **bodily injury** to an **insured person** under any other coverages of this policy will be reduced by that amount.

Further, the Tennessee Uninsured Motorists Insurance endorsement on the policy issued by Allstate to Mr. McCoy states, in part, as follows:

> **Limits of Liability**
> \*     \*     \*
> Limits payable will be reduced by all amounts paid or payable by the owner or operator of the uninsured **motor vehicle** or anyone else responsible. This includes all sums collected or collectible under the **bodily injury** liability coverage of this or any other policy and all sums collected or collectible under the uninsured motorist coverage of this or any other policy.
>
> The **Uninsured Motorists Insurance** limits apply to each **insured auto** as shown on the Policy Declarations. These limits are the maximum **we** will pay for any one **motor vehicle** accident regardless of the number of:
>
> 1. premiums paid;
>
> 2. premiums shown on the Policy Declarations;
>
> 3. claims made;
>
> 4. vehicles or persons shown on the Policy Declarations; or
>
> 5. vehicles involved in the accident.
>
> In no event shall **our** liability under this coverage be more than the limits

of the **Uninsured Motorists insurance** provided.

2. Damages payable will be reduced by:

> a) all amounts paid by or on behalf of the owner or operator of the uninsured **motor vehicle**, including an underinsured **motor vehicle**, or anyone else responsible. This includes all sums paid under the **bodily injury** liability coverage or **property damage** liability coverage of this or any other **auto** policy.

> b) all amounts paid or payable under any workers' compensation law, disability benefits law, or similar law, **Automobile Medical Payments**, or any similar medical payments coverage under this or any other **auto** policy. If the accident arises from the use of an uninsured **motor vehicle**, **we** aren't obligated to make any payment under this coverage until the limits of liability for all liability protection in effect and applicable at the time of the accident have been exhausted by payment of judgments or settlements.

Clearly, then, Allstate wrote its insurance contract to allow it to do what it is attempting to do in this case: reduce its uninsured motorist liability by any amounts that it pays under its separate medical payments coverage. When considering issues of insurance coverage, however, we must consider more than just the contract between an insurer and insured. Uninsured/underinsured motorist "statutes, as a matter of law, become provisions of all automobile insurance policies issued for delivery in Tennessee. Where there is a conflict between a statutory provision and a policy provision, the statutory provision must prevail." *Powell*, 487 S.W.3d at 532 (quoting *Sherer et al. v. Linginfelter et al.*, 29 S.W.3d 451, 454 (Tenn. 2000) (citing *Fleming v. Yi*, 982 S.W.2d 868, 870 (Tenn. Ct. App. 1998))). Therefore, we will proceed to consider whether Allstate's insurance contract comports with Tennessee's uninsured motorist act, as it has been interpreted by case law.

Tennessee's uninsured motorist act is contained within Tennessee Code Annotated sections 56-7-1201 through -1206. "Through the uninsured motorist act, the General Assembly intended to provide '*protection'* to the insured under the insured's own policy of insurance." *Clark v. Shoaf*, 302 S.W.3d 849, 855 (Tenn. Ct. App. 2008) (emphasis in original) (citation omitted). To that end, section 56-7-1201 of Tennessee's uninsured motorist act states, in pertinent part, as follows:

> (a) Every automobile liability insurance policy delivered, issued for delivery or renewed in this state, covering liability arising out of the ownership, maintenance, or use of any motor vehicle designed for use primarily on public roads and registered or principally garaged in this state, shall include uninsured motorist coverage, subject to provisions filed with and approved

by the commissioner, for the protection of persons insured under the policy who are legally entitled to recover compensatory damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting from injury, sickness or disease.

(1) The limits of the uninsured motorist coverage shall be equal to the bodily injury liability limits stated in the policy.

\*        \*        \*

(d) The limit of liability for an insurer providing uninsured motorist coverage under this section is the amount of that coverage as specified in the policy less the sum of the limits collectible under all liability and/or primary uninsured motorist insurance policies, bonds, and securities applicable to the bodily injury or death of the insured. . . .

Tenn. Code Ann. §§ 56-7-1201(a)(1), (d).

Section 56-7-1205 goes on to state:

Nothing contained in this part shall be construed as requiring the forms of coverage provided pursuant to this part, whether alone or in combination with similar coverage afforded under other automobile liability policies, to afford limits in excess of those that would be afforded had the insured under the policies been involved in an accident with a motorist who was insured under a policy of liability insurance with the minimum limits described in § 55-12-107, or the uninsured motorist liability limits of the insured's policy if the limits are higher than the limits described in § 55-12-107. The forms of coverage may include terms, exclusions, limitations, conditions, and offsets that are designed to avoid duplication of insurance and other benefits.

And section 56-7-1206(i) provides that "[t]he uninsured motorist insurance carrier shall be entitled to credit for the total amount of damages collected by the insured from all parties alleged to be liable for the bodily injury or death of the insured whether obtained by settlement or judgment and whether characterized as compensatory or punitive damages."

Although the parties put forth arguments concerning all of the above statutes, in our view, the crux of this dispute concerns section 56-7-1205. Under the plain language of this statute, the uninsured motorist carrier is not required to provide coverage "in excess" of the policy limits "whether alone or in combination with similar coverage afforded under other automobile liability policies." Tenn. Code Ann. § 56-7-1205. In this case, there is no

dispute that the policy limit of Mr. McCoy's uninsured motorist policy is $50,000.00.[3] In order to effectuate that purpose, the uninsured motorist carrier may impose, *inter alia*, "offsets that are designed to avoid duplication of insurance and other benefits." In an unreported case, the Tennessee Supreme Court has held that the predecessor to this statute does not prohibit insurance contracts that provide for offsets of uninsured motorist coverage for medical payments under a separate insurance policy held by the insured. *See Terry v. Aetna Cas. & Sur. Co.*, 510 S.W.2d 509, 511 (Tenn. 1974) (citing ***Jenkins v. State Farm*** (Tenn. Aug. 3, 1970) (holding that "it is clear beyond argument that the legislature intended by these provisions to authorize the offset" of medical payments for uninsured motorist coverage when such is included in the insurance policy at issue)). Allstate contends that it may therefore offset its payment of uninsured motorist coverage by the amounts that Mr. McCoy received under the medical payments coverage, a type of "similar coverage afforded" by Mr. McCoy's insurance policy, so that it is not required to pay in excess of the $50,000.00 limit on coverage required by the statute.

Mr. McCoy argues, however, that this interpretation and application of section 56-7-1205 is at odds with the plain language of the statute and the caselaw interpreting it. We will consider each of these arguments in turn.

First, Mr. McCoy contends that Allstate's argument ignores section 56-7-1205's requirement that offsets be permitted only so long as they prevent "duplication of insurance and other benefits." Because the damages Allstate sustained in this accident totaled well over $55,000.00, he contends that there can be no duplication of benefits so as to bring this case within the ambit of section 56-7-1205. In essence, he argues that because he was not made whole by the $55,000.00 to which he asserts he is entitled, there should be no offset. Respectfully, we disagree.

In order to resolve this dispute, we must consider the nature of uninsured motorist insurance in Tennessee. In 1974, the Tennessee Supreme considered the two schools of thought applicable to uninsured motorist coverage:

> Under our research there appears to be two theories in regard to offset provisions in policies containing uninsured motorist coverage based on the legislative intent in the enactment of uninsured motorist statutes. The first theory is based on a finding the legislative purpose of such statutes is to provide full coverage up to the policy limits so long as payments under the uninsured motorist coverage, plus any payments received from other sources,

---

[3] As previously discussed, under the current iteration of the uninsured motorist statutes, the limit defined by statute is not static, but depends on the amount of coverage the insured has purchased for bodily injury liability coverage. *See* Tenn. Code Ann. § 56-7-1201(a)(1). So while the statute still provides the basis for calculating the limit of uninsured motorist coverage required, we must look to the specific insurance contract at issue to calculate that actual minimum amount of coverage required. The resulting amount is therefore both a statutory and a contractual minimum.

do not exceed insured's actual damage. This is termed broad coverage and any offsets in the policies inhibiting such full coverage are held void. The second theory is based on a finding the legislative purpose of such statutes is to provide insured a recovery only up to the statutory minimum required without regard to insured's actual damages, unless such be less than the statutory minimum. This is termed limited coverage and under such, by virtue of set-off provisions in a policy, an insured's statutory minimum coverage can be reduced by amounts received from other sources.

*Terry*, 510 S.W.2d at 513. Comparing these two theories to the predecessor to section 56-7-1205, our high court concluded that "that enactment of this section 'denote[d] a legislative purpose to provide less than broad coverage.'" *Green v. Johnson*, 249 S.W.3d 313, 321 (Tenn. 2008) (quoting *Terry*, 510 S.W.2d at 513). So the supreme court explained that:

[B]y the enactment of [Tennessee Code Annotated section 56-7-1205] as a section of our uninsured motorist statutes, it is the legislative purpose to provide an insured motorist a right of recovery under the uninsured motorist provisions of his policy only up to the statutory required minimum [] and provisions in such policies, approved by the Commissioner of Insurance, operating to reduce such coverage where other coverage or benefits are available to the insured arising from accident causing the loss, are valid if such provisions do not operate to deny payments to an insured of less than the statutory minimum.

*Id.* (citing *Terry*, 510 S.W.2d at 513) (alterations made by the *Green* court). And the Tennessee Supreme Court explained that despite slight alterations to section 56-7-1205 over the years, "the legislative purpose of this section has not changed," and compels the conclusion that the rule in *Terry* remains intact.[4] In other words, "[t]he legislative purpose of [section 56-7-1205] . . . is to allow uninsured motorist carriers to limit their liability when an insured is able to collect monies elsewhere, *no matter the source*." *Green*, 249 S.W.3d at 322 (emphasis added). As such, monies received by a plaintiff from another source related to the accident caused by an uninsured motor vehicle are "duplicative" to the monies owed under the uninsured motorist policy and therefore "are subject to setoff." *Id.* at 323.

Applying this rule to the facts of the case, the Tennessee Supreme Court held that that the plaintiffs were not entitled to receive any funds from its uninsured motorist carrier because the plaintiffs had already received in excess of their uninsured motorist policy limits from one of the at-fault parties to the case. *Id.* Specifically, the uninsured motorist policy provided the same limits as this case—$50,000.00 per individual. The amount of

---

[4] The language of section 56-7-1205 remains the same today as it was when *Green* was decided.

the settlement was not specified except that the parties stipulated that it was over $50,000.00. The plaintiffs' compensatory damages, however, totaled into the millions. *Id.* at 315. But the court held that the monies were duplicative without any analysis as to whether the payment from the at-fault party was less than the plaintiffs' actual damages. *Id.* at 315. So the *Green* case makes clear that monies may be duplicative regardless of the fact that an offset results in an insured being made less than whole. Or as another court has explained it, while the broad rule calculates the uninsured motorist carrier's obligation by subtracting offsets from the "actual damages of the insured," the limited rule subtracts "those amounts from the coverage limits under the uninsured motorist policy" ***Boyce v. Geary***, No. 01-A-01-9409-CV00410, 1995 WL 245389, at *3 (Tenn. Ct. App. Apr. 28, 1995). The ***Terry*** opinion and its progeny make clear that the second, more limited rule is applicable in Tennessee. ***Terry***, 510 S.W.2d at 513 (expressly choosing the limited coverage rule). So the plaintiff need not be made whole in order for offsets to apply in the context of limited uninsured motorist coverage, so long as he or she receives the minimum uninsured motorist coverage applicable from the uninsured motorist carrier, "alone or in combination" with other sources. Tenn. Code Ann. § 56-7-1205.

Applying this rule to the case-at-bar indicates that Mr. McCoy is not entitled to the additional $5,000.00 payment he sought in the trial court. Here, there is no dispute Allstate's uninsured motorist insurance policy has a maximum pay out of $50,000.00. Under the policy, Allstate is entitled to an offset of this amount for any payments made from other sources, including medical payments coverage. Pursuant to section 56-7-1205, ***Terry***, and ***Green***, Allstate is entitled to offset its payment under the uninsured motorist policy by any amounts that it received from "other coverage or benefits" without respect to the actual damages suffered by Mr. McCoy, so long as the offsets do not deny Mr. McCoy of at least his statutory minimum. Here, the $45,000 payment under the uninsured motorist policy, "in combination with similar coverage afforded under" the medical payments coverage, provide Mr. McCoy with the statutory minimum amount required in this particular case. So the $5,000.00 medical benefit payment is duplicative of the amounts Mr. McCoy was to receive under the uninsured motorist policy and Allstate is entitled to offset that prior payment to meet the statutory minimum under section 56-7-1205, ***Terry***, and ***Green***.

Other caselaw cited by Mr. McCoy does not lead us to a different conclusion. For example, Mr. McCoy cites ***Powell v. Clark***, 487 S.W.3d 528 (Tenn. Ct. App. 2015), which did not allow an offset despite the insurance policy employing the exact same language at issue here. In ***Powell***, Ms. Powell was a passenger in a car driven by Ms. Collins, which was struck by a car driven by Ms. Clark, who was undisputedly 100% at fault for the accident. *Id.* at 529. Ms. Clark was uninsured and never appeared in the case. *Id.* Ms. Powell maintained an uninsured motorist policy with a limit of $100,000.00 with State Farm, and Ms. Collins maintained an uninsured motorist policy with a limit of $100,000.00, and a medical payments coverage policy with a limit of $2,000.00, with Allstate. *Id.* Allstate was the primary uninsured motorist carrier with respect to the accident

and paid Ms. Powell $2,000.00 under the medical payments portion of Ms. Collins' policy, while State Farm paid medical payments on behalf of Ms. Powell in the amount of $70,021.32 pursuant to her own insurance policy. *Id.* at 529–30. Ms. Powell and her husband then sued Ms. Clark and Allstate, as the uninsured motorist carrier for Ms. Collins. *Id.* at 530. The trial court determined that Allstate had paid the plaintiffs $2,000.00 "under the Medpay provisions of the uninsured motorist coverage applicable to this case," and the plaintiffs were entitled to judgment against Allstate for the entire $100,000.00 uninsured motorist limit. *Id.* at 531. Therefore, the trial court entered judgment against Allstate in the amount of $98,000.00.[5] *Id.* The trial court further determined that Allstate was not entitled to offset its uninsured motorist limits with the medical payments made by State Farm. *Id.*

In the end, we agreed with the trial court. In support, we cited several statutes and the language of the uninsured motorist insurance policy itself. For example, Tennessee Code Annotated section 56-7-1204(a) provides for subrogation of "the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of the person against any person or organization *legally responsible* for the bodily injury or property damage for which payment is made[.]" Likewise, the uninsured motorist insurance policy expressly stated that damages paid would be reduced by "all amounts paid by or on behalf of the owner or operator of the uninsured auto, including an uninsured auto or anyone else responsible." *Id.* at 534.

As the statutes and the insurance contract were to be read in pari materia, we concluded that Allstate was not entitled to an offset for payments made by a party who was not responsible for the damages, regardless of the limited coverage offered by Tennessee uninsured motorist act:

> [T]here is also a more subtle concept of legal liability at play in the statutes and caselaw. This idea of liability is not specifically fault-based; rather, it rests upon the equitable notion that various offsets, although broadly construed to give effect to the limited coverage scheme our Legislature has adopted, should nonetheless be allowed only if such payments are made by the party at fault for the accident, or the person or entity legally responsible.

---

[5] It is interesting to note that the trial court in ***Powell***, without apparent dispute, did exactly what Mr. McCoy is arguing should not be done in this case. The offset for medical payments was not raised as an issue in Powell, and was therefore not considered by this Court. As such, we cannot conclude that it provides binding authority that an offset for medical payments by the insured's own insurance carrier is authorized by the uninsured motorist statutes. *See* ***Harrison v. Wilkerson***, 56 Tenn. App. 188, 194–95, 405 S.W.2d 649, 652 (Tenn. Ct. App. 1966) ("It is axiomatic that an opinion in a former case is authority only for the points actually decided and that general expressions in the opinion are to be taken and understood as made in connection with the case under consideration. Language which was not decisive in the former decision is not binding as a precedent.").

*Powell*, 487 S.W.3d at 536. Because State Farm was not "the legally responsible insurer" for Ms. Powell's injuries, we held that the Allstate could not offset payments made by that company. *Cf. **Sherer v. Linginfelter***, 29 S.W.3d 451, 454 (Tenn. 2000) (holding that Tennessee's uninsured motorist statutes, taken together "allow[] the insurer to recover from its insured only those amounts received from the person or entity causing those same damages"); ***Elsner v. Walker***, 879 S.W.2d 852, 855 (Tenn. Ct. App. 1994) (refusing an offset for medical payments by the plaintiff's medical insurance company).

But ***Powell*** is no help to Mr. McCoy in this case. Distilled to its essence, the rule established by ***Powell*** is that, in the context of that case, the uninsured motorist carrier was not entitled to an offset unless the payment sought to be set off was made by a party legally responsible for the insured's injuries.[6] While Ms. Conway and Mr. Douglas may be the tortfeasors in this case, ***Powell*** makes clear that in light of the uninsured motorist coverage, Allstate is the *legally responsible party* in this case. ***Id.*** ("[B]y statute, Allstate is the legally responsible uninsured motorist carrier in this case."). Allstate fulfills the exact same role in this case as it did in ***Powell***—as the primary uninsured motorist carrier with respect to this accident. *See* Tenn. Code Ann. § 56-7-1201(b)(3)(A) ("The uninsured motorist coverage on the vehicle in which the insured was an occupant shall be the primary uninsured motorist coverage[.]"). And although an uninsured motorist carrier does not actually insure the uninsured motorist, ***Clark v. Shoaf***, 302 S.W.3d 849, 855 (Tenn. Ct. App. 2008) (quoting ***Thompson v. Parker***, 606 S.W.2d 538, 540 (Tenn. Ct. App. 1980)), the "uninsured motorist coverage places the insured's insurance carrier 'in the role of a liability carrier for the uninsured motorist." ***Id.*** (quoting ***Cavalier Ins. Corp. v. Osment***, 538 S.W.2d 399, 403 (Tenn. 1976)). Thus, while the uninsured motorist carrier is not the uninsured motorist's insurer in reality, the statutes have the effect of making "the insurance carrier stand as the insurer of the uninsured motorist." ***Dunn v. Hackett***, 833 S.W.2d 78, 82 (Tenn. Ct. App. 1992) (citing ***Stallcup v. Duncan***, 684 S.W.2d 643 (Tenn. Ct. App. 1984)); *see also **Glover v. Tennessee Farmers Mut. Ins. Co.***, 225 Tenn. 306, 313, 468 S.W.2d 727, 730 (Tenn. 1971) ("The whole intent and purpose of the uninsured motorist act, is, in essence, to provide [p]rotection by making the insurance carrier stand as the insurer of the uninsured motorist[.]"); ***Marler v. Scoggins***, 105 S.W.3d 596, 598 (Tenn. Ct. App. 2002) (characterizing this statement in ***Dunn*** as "correct[]"). Thus, ***Powell's*** prohibition against seeking offsets from parties without legal responsibility is completely inapposite here, where Allstate is the legally responsible insurance carrier and

---

[6] Tennessee courts have previously found no authority to prohibit an uninsured motorist carrier from offsetting its payments by the amount of workers' compensation benefits received by the insured. *See **Sherlin v. Hall***, 237 S.W.3d 647 (Tenn. Ct. App. 2007). Although the legal responsibility issue was not raised in ***Sherlin***, it is self-evident that a workers' compensation carrier is legally responsible for the payment of benefits pursuant to its policy. This fact lends some support to our holding that a legally responsible party for purposes of uninsured motorist coverage includes more than just the tortfeasor, discussed *infra*.

it is seeking to offset payments made under its own policies so as not to pay anything more than the maximum of $50,000.00.[7]

The fact that Mr. McCoy will recover the maximum $50,000.00 even with the offset also distinguishes this case from other cases cited by Mr. McCoy. For example, both **Boyce v. Geary**, No. 01-A-01-9409-CV00410, 1995 WL 245389 (Tenn. Ct. App. Apr. 28, 1995), and **Bayless v. Pieper**, No. M2008-01073-COA-R3-CV, 2009 WL 2632763 (Tenn. Ct. App. Aug. 26, 2009), involved an effort by the uninsured motorist carrier to double its offset for a single payment by a third party to the insured. *See Boyce*, 1995 WL 245389, at *3 ("[I]f we adopted the position advanced by the appellant, the insured would suffer a double reduction in his benefits as the result of a single payment made by the tortfeasor's insurance company."); **Bayless**, 2009 WL 2632763, at *2 ("[L]iability insurance proceeds used to reimburse a workers' compensation subrogation lien are not regarded as "duplicate" payments such that a UM carrier may claim a double offset for overlapping benefits."). Here, there is no allegation that the $5,000.00 medical payment made to Mr. McCoy is subject to a third party's subrogation lien or that Allstate is seeking a double offset in this case. So these cases provide no support for Mr. McCoy's position in this case.

In sum, section 56-7-1205 and the construing caselaw permit an insurer to offset its payment of uninsured motorist coverage by the amounts that the insured receives from other legally responsible parties. Here, Allstate, a legally responsible party, paid Mr. McCoy $5,000.00 in satisfaction of the medical payments coverage he purchased. Pursuant to Mr. McCoy's insurance policy and the uninsured motorist statutes, Allstate is allowed an offset for this amount, reducing the amount it owes Mr. McCoy under the uninsured motorist coverage purchased by Mr. McCoy. To require Allstate to pay Mr. McCoy an additional $5,000.00 would be to mandate payment by Allstate "in excess" of that established by the uninsured motorist statutes and Mr. McCoy's insurance policy. Tenn. Code Ann. § 56-7-1205. Consequently, the trial court erred in requiring Allstate to pay $5,000.00 in excess of its coverage limits. The trial court's ruling is therefore reversed.

## V. CONCLUSION

The judgment of the Circuit Court of Wilson County is reversed, and this case is remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed to Appellee Christopher McCoy, for which execution may issue if necessary.

---

[7] Of course, Mr. McCoy's uninsured motorist insurance policy likewise contemplates that the uninsured motorist coverage can be offset by payments made by a responsible party either under the same policy or an outside policy, as it provides for offsets for sums collected under "this or any other policy and all sums collected or collectible under the uninsured motorist coverage of this or any other policy." Although **Powell** held that this broad language is limited by the party responsible rule, that rule is simply satisfied here where the offset is for payments made by the legally responsible uninsured motorist carrier.

_s/ J. Steven Stafford_____
 J. STEVEN STAFFORD, JUDGE